1  Hovanes Margarian, SBN 246359
   hovanes@margarianlaw.com
2  Armen Margarian, SBN 313775
   armen@margarianlaw.com
3  Shushanik Margarian, SBN 318617
   shushanik@margarianlaw.com
4  THE MARGARIAN LAW FIRM
   801 North Brand Boulevard, Suite 210
5  Glendale, California 91203
   Telephone Number:    (818) 553-1000
6  Facsimile Number:    (818) 553-1005

7  Attorneys for Plaintiff,
   ALBER KARAMANOUKIAN
8

9              **UNITED STATES DISTRICT COURT**

10        **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

11
   ALBER KARAMANOUKIAN, as an        Case No.:
12 individual, on behalf of himself, all others   (Class Action)
   similarly situated, and the general public,
13                                     **CLASS ACTION COMPLAINT FOR**
          Plaintiff,                   **DAMAGES:**
14
   vs.                                 1. **Fraud and Deceit**
15
   BMW OF NORTH AMERICA, LLC, a        2. **Breach of Express Warranty**
16 Delaware Limited Liability Company;
   VALENCIA B IMPORTS INC., a          3. **Breach of Implied Warranty**
17 California Corporation; PACIFIC BMW, a
   California Corporation; and DOES 1   4. **Breach of Warranty (Song-Beverly**
18 through 10, inclusive,                  **Consumer Warranty Act), Civil Code §**
                                          **1790,** *et seq.***;**
19        Defendants.
                                       5. **Violation of the California Consumer Legal**
20                                        **Remedies Act ("CLRA"), Civil Code § 1750**
                                          *et seq.***;**
21
                                       6. **Violation of the California Unfair**
22                                        **Competition Law ("UCL"), Business and**
                                          **Professions Code § 17200,** *et seq.*
23
                                       7. **Violation of the California False Advertising**
24                                        **Laws ("FAL"), Business and Professions**
                                          **Code § 17500,** *et seq.*
25
                                       8. **Nuisance**
26

27                                     **DEMAND FOR JURY TRIAL**

28 ///

---

PLAINTIFF KARAMANOUKIAN'S CLASS ACTION COMPLAINT FOR DAMAGES

# COMPLAINT

NOW COMES Plaintiff, ALBER KARAMANOUKIAN, as an individual, on behalf of himself, all others similarly situated, and the general public, by and through his attorneys, The Margarian Law Firm, with Plaintiff's Class Action Complaint for Damages against Defendants, BMW OF NORTH AMERICA, LLC, a Delaware Limited Liability Company, and DOES 1 through 10, inclusive:

## INTRODUCTION

1.     This is a class action lawsuit brought by Plaintiff on behalf of himself and a class of current and former BMW vehicle owners and lessees with defective M Compound Brakes ("Subject Brakes" or "Compound Brakes") utilized in numerous BMW vehicles sold in the United States, including but not limited to: the 2020 M8 Convertible (collectively, the "Class Vehicles").[1]

2.     This action arises from Defendant BMW's failure, despite its longstanding knowledge of a material defect, to properly disclose to Plaintiff and other consumers that the Class Vehicles' brake system is defective and generates an extremely loud, high-pitched squealing noise (the "Brake Defect") which impairs the safety and reliability of the Class Vehicles.

3.     The Brake Defect, which is exists in all vehicles that have the Subject Brakes, causes a loud, high-pitched squealing noise when the brakes are applied during ordinary and intended use. The noise exposes the driver and occupants of the Class Vehicles, as well as others who share the road with them, to an increased risk of accident, injury, or death. As discussed further herein, numerous owners and lessees of the Class Vehicles have experienced the loud, high-pitched squealing noise while operating a Class Vehicle, thus placing themselves and those around them in immediate danger.

4.     The loud, high-pitched squealing noise emitted when the brakes are applied creates a safety hazard due to the potential to startle the Class Vehicle drivers, having an adverse impact on driving decisions and habits of the Class Vehicle drivers. The Brake Defect distracts the Class Vehicle driver and third parties, endangering their physical safety and well-being due to a loss of concentration and focus on the road. Similarly, nearby pedestrians hear the loud braking nose and pay attention to the noise rather than having their full attention on other hazards in their path.

---

[1] Plaintiff reserves the right to amend or add to the vehicles models included in the definition of Class Vehicles after conducting discovery.

5.    Defendant BMW tried to brush the Brake Defect off as normal. Calling the Brake Defect "normal" is problematic because consumers rely on the squealing noises to indicate when the brakes need to be repaired. If the brakes always squeal and squeak, then consumers will not know when the brakes actually need to be fixed.

6.    Normal brakes, as Defendant likes to call it, simply do not make this loud, high-pitched squealing noise as consistently as the Class Vehicles do. Plaintiff has had his vehicle for just shy of one (1) year now and the Subject Brakes still make the noise like they did on day one. The noise generated by the Subject Brakes is above and beyond the expectations of an ordinary consumer.

7.    Defendant BMW has long been aware of the Brake Defect and many owners and lessees of the Class Vehicles have communicated with Defendant or its agents to request that it remedy and/or properly address the Brake Defect. Yet, notwithstanding its longstanding knowledge of this defect and such requests, Defendant BMW has routinely refused to properly repair the Class Vehicles and put a stop to this excessively annoying noise.

8.    As a result of Defendant BMW's unfair, deceptive, and/or fraudulent business practices, owners and/or lessees of the Class Vehicles, including Plaintiff, have suffered an ascertainable loss of money and/or property and/or loss in value.

9.    Had Plaintiff and other Class Members known about the Brake Defect at the time of purchase or lease, they would not have bought or leased the Class Vehicles or would have paid substantially less for them.

10.    As a result of the Brake Defect and the monetary costs associated with attempting to repair such defect, Plaintiff and the Class Members have suffered injury in fact, incurred damages, and have otherwise been harmed by Defendant BMW's conduct.

11.    Accordingly, Plaintiff brings this action to redress Defendant BMW's fraud and deceit, breaches of express and implied warranties pursuant to the Song-Beverly Consumer Warranty Act (Civil Code § 1790, *et seq.*) and the Magnuson-Moss Warranty Act (15 U.S.C. § 2301, *et seq.*), violation of the California Consumer Legal Remedies Act ("CLRA") (Civil Code § 1750, *et seq.*), and violation of the California Unfair Competition Act ("UCL") (Business and Professions Code § 17200, *et seq.*) as well as False Advertisement (Business and Professions Code § 17500, *et seq.*) for Defendant

BMW's pattern and practice of fraudulently, unfairly, deceptively, and unlawfully marketing, advertising, promoting, and leasing/selling various vehicles with a defective brake system that generates an extremely loud squealing noise when using the brakes.

12.     This action seeks redress for Plaintiff and the Class in the form of compensatory damages, punitive damages, and injunctive relief, which would include, *inter alia*, an order directing Defendant BMW to cease the challenged practices, including the manufacture, sale, and installation of defective, noisy brakes and initiate a program to provide refunds, repairs, and/or restitution to Plaintiff and the Class.

## PARTIES

13.     Plaintiff KARAMANOUKIAN, is and was at all times relevant herein an individual residing in Los Angeles County, California. Plaintiff leased, and during pertinent times was in possession of, one of the Subject Vehicles, a 2020 BMW M8 Convertible bearing the Vehicle Identification Number WBSDZ0C0XLCD34148 ("Subject Vehicle"). The Subject Vehicle was manufactured, sold, or otherwise delivered to Plaintiff with the defective brake system at issue in this case and as described herein.

14.     Plaintiff appears in this action on behalf of himself, on behalf of all others similarly situated, and pursuant to Business and Professions Code §§ 17200 *et seq.* and 17500 *et seq.*, on behalf of the general public in his capacity as a private attorney general.

15.     Defendant, BMW, is a Delaware Limited Liability Company licensed to do, and is doing business throughout the United States, with its principal place of business located at 300 Chestnut Ridge Road, Woodcliff Lake, NJ 07677.

16.     BMW transacts business in Los Angeles County, California, and at all relevant times designed, manufactured, promoted, marketed, distributed, and/or leased/sold the Subject Vehicles that are the subject of this Complaint, throughout the United States including California. Defendant BMW has significant contacts with Los Angeles County and the activities complained of herein occurred, in whole or in part, in Los Angeles County.

17.     Defendant, Valencia B Imports Inc., a California Corporation ("Valencia BMW"), doing business as Valencia BMW, is licensed to do business, and is doing business in California, at 23435

Valencia Boulevard, Valencia, CA 91355.

18.   Defendant, Pacific BMW, a California Corporation ("Pacific BMW"), is licensed to do business, and is doing business in California, at 800 South Brand Boulevard, Glendale, CA 91204.

19.   Plaintiff is informed and believes and based thereon alleges that Defendants DOES 1 through 10 are corporations or are other business entities or organizations of a nature unknown to Plaintiff.

20.   Plaintiff is unaware of the true names of Defendants DOES 1 through 10. Plaintiff sues said defendants by said fictitious names and will amend this Complaint when the true names and capacities are ascertained or when such facts pertaining to liability are ascertained, or as permitted by law or by the Court.  Plaintiff is informed and believes that each of the fictitiously named defendants is in some manner responsible for the events and allegations set forth in this Complaint.

21.   Plaintiff is informed and believes and based thereon alleges that at all relevant times, each Defendant was a developer, designer, manufacturer, distributor, and lessor/seller of vehicles; was the principal, agent, partner, joint venturer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest, and/or predecessor in interest of some or all of the other Defendants; and was engaged with some or all of the other defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged in this complaint. Plaintiff is further informed and believes and based thereon alleges that each Defendant acted pursuant to and within the scope of the relationships alleged above, and that at all relevant times, each Defendant knew or should have known about, authorized, ratified, adopted, approved, controlled, aided, and abetted the conduct of all other Defendants. As used in this Complaint, "Defendants" means "Defendants and each of them," and refers to the Defendants named in the particular cause of action in which the word appears and includes BMW and DOES 1 through 10.

22.   At all times mentioned herein, each Defendant was the co-conspirator, agent, servant, employee, and/or joint venturer of each of the other Defendants and was acting within the course and scope of said conspiracy, agency, employment, and/or joint venture and with the permission and consent of each of the other Defendants.

23.   Plaintiff makes the allegations in this Complaint without any admission that, as to any particular allegation, Plaintiff bears the burden of pleading, proving, or persuading, and Plaintiff reserves all of Plaintiff's rights to plead in the alternative.

## JURISDICTION AND VENUE

24.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 as this action arises under a federal statute. This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

25.   Jurisdiction is also proper under the Class Action Fairness Act, 28 U.S.C. § 1332(d) because: (1) at least one Plaintiff is a citizen of a different state than Defendants; (2) the amount in controversy exceeds $5,0000,000; and (3) there are at least 100 individuals in the putative class that Plaintiff seeks to represent through this action.

26.   This Court has personal jurisdiction over Defendants because Defendants regularly conduct business in California, are present and licensed to conduct business in California, and the events giving rise to this lawsuit occurred in California. Defendants BMW, Valencia BMW, and Pacific BMW have advertised, marketed, promoted, distributed, and sold the Class Vehicles in California.

27.   Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants transact substantial business in this District, and a substantial part of the acts, conduct, and events alleged herein occurred within California, including the County of Los Angeles.

## CLASS DEFINITIONS AND CLASS ALLEGATIONS

28.   This action has been brought and may properly be maintained as a class action pursuant to the provisions of California Code of Civil Procedure § 382 and Civil Code § 1781 and other applicable laws on behalf of himself and a class as defined as follows:

(1)   <u>California Class</u>: The Class that Plaintiff seeks to represent ("California Class") consists of all persons and entities who purchased or leased, or will purchase or lease, a Subject Vehicle in California, on or after the date Defendant placed the Subject Vehicles into the stream of commerce (the Class specifically does not include any claims seeking damages for personal injuries or property damage resulting from defects as alleged herein). Excluded from the Class are Defendants, any parent, subsidiary, affiliate, or controlled

person of Defendants, as well as the officers, directors, agents, servants, or employees of Defendants, and the immediate family member of any such person. Also excluded is any trial judge who may preside over this case.

(2)   National Class: The Class that Plaintiff seeks to represent ("National Class") is defined to include all persons and entities within the United States who purchased or leased, or will purchase or lease, a Subject Vehicle, on or after Defendant placed the Subject Vehicles into the stream of commerce (the Class specifically does not include any claims seeking damages for personal injuries or property damage resulting from defects as alleged herein). Excluded from the National Class are Defendants, any parent, subsidiary, affiliate, or controlled person of Defendants, as well as the officers, directors, agents, servants, or employees of Defendants, and the immediate family member of such person. Also excluded is any trial judge who may preside over this case.

29.   There is a well-defined community of interest in the litigation, and the proposed class is ascertainable.

(1)   Common Questions Predominate: Common questions of law and fact exist as to all class members and predominate over any questions that effect only individual members of the class, if there are any individual questions. The common questions of law and fact include, but are not limited to:

   a.   Whether the Subject Vehicles were designed, manufactured, sold, and/or otherwise equipped with brake systems that were poor, weak, or inferior in design and/or otherwise defective;

   b.   Whether Defendants knew of the defective nature of the brake systems on the Subject Vehicles;

   c.   Whether Defendants violated California consumer protection statutes;

   d.   Whether Defendants breached its express warranties;

   e.   Whether Defendants breached its implied warranties;

   f.   Whether Defendants' brake systems on the Subject Vehicles contained an inherent design and/or manufacturing defect;

g.   Whether the defect in the brake systems on the Subject Vehicles caused and/or contributed to the loud squealing brake noise when used for their intended purpose (driving);

h.   Whether the advertisements and statements made by Defendants were and are false and/or had and have had a tendency to deceive customers, by either failing to disclose the existence of an inherent defect or misrepresenting that the Subject Vehicles contained no defects;

i.   Whether Defendants failed to adequately warn and/or notify class members and the general public regarding the defects of the brake systems on the Subject Vehicles causing loud squealing noises due to their inherent design or defect as described herein;

j.   Whether Defendants have failed to notify all Subject Vehicle owners or lessees of the defect here at issue and repair or correct (or offer to repair or correct) all defective brake systems on the Subject Vehicles at no cost to the owners or lessees of the Subject Vehicles:

k.   Whether Defendants are obligated to inform the Class of their right to obtain, free of charge, repair, and replacement of the defective components of the defective brake system on the Subject Vehicles;

l.   Whether Defendants adequately informed Dealers of the remedies to the design or defect as described herein;

m.   Whether Defendants are required to provide the New Motor Vehicle Board with a copy of BMW's Service Bulletin(s), if any, concerning the remedies to the design or defect as described herein (or the information contained in the bulletin(s)) so that the public could have access to it;

n.   The nature and extent of Defendant's implied warranty of merchantability for the brake system;

o.   Whether BMW's warranty to repair defects in the Subject Vehicles was part of the basis of the bargain as between BMW and members of the Class;

PLAINTIFF KARAMANOUKIAN'S CLASS ACTION COMPLAINT FOR DAMAGES

p.    Whether the presence of the defective brake systems in the Subject Vehicles is an unlawful, unfair, and/or "fraudulent" business act or practice within the meaning of the Business and Professions Code §§ 17200 *et seq.*;

q.    Whether Defendants concealed from and/or failed to disclose to Plaintiff and the Class the true defective nature of the brake systems;

r.    Whether Defendants had a duty to Plaintiff and the Class to disclose the defective nature of the brake systems;

s.    Whether the facts concealed and/or otherwise not disclosed by Defendants to Plaintiff and the Class are material facts;

t.    Whether Defendants knew that the brake systems are defective and would result in a loud squealing noise meaning that the Subject Vehicles were not suitable for use as passenger vehicles and otherwise are not as warranted and represented by Defendants;

u.    Whether Defendants knew or reasonably should have known about these inherent defect(s);

v.    When Defendants learned of this inherent defect;

w.    Whether Defendants continued to lease/sell the Subject Vehicles with the defective brake systems as alleged herein despite its knowledge and/or reckless or negligent disregard of this inherent defect;

x.    Whether the Class Members are entitled to damages in terms of cost of replacement (or repair) of the defective brake systems on the Subject Vehicles and any out-of-pocket expenses incurred in connection therewith, and if so, the nature and amount of such damages;

y.    Whether Plaintiff and the Class are entitled to recover damages and the proper measure of damages;

z.    Whether Plaintiff and the Class are entitled to equitable relief, including but not limited to restitution;

aa.    Whether Plaintiff and the Class are entitled to declaratory relief sought herein;

bb.    Whether Plaintiff and the Class are entitled to injunctive relief sought herein;

cc.    Whether Plaintiff and the Class are entitled to punitive damages and, if so, the amount of such exemplary damages;

dd.    Whether the defective brake systems caused the amount paid for the purchase or lease of the Subject Vehicles to be less than the fair market value of those vehicles; and

ee.    Whether there is a difference between the fair market value of the Subject Vehicles and the actual value of those vehicles given the presence of the defective brake systems.

(2)    <u>Typicality</u>: Plaintiff's claims are typical of the claims of the Class Members. Plaintiff and the Class Members sustained the same types of damages and losses.

(3)    <u>Numerosity and Ascertainability</u>: The Classes are so numerous, thousands of persons, that individual joinder of all class members is impractical under the circumstances. The class members can be ascertained by, among other things, lease/sales records, and by responses to methods of class notice permitted by law.

(4)    <u>Adequacy</u>: Plaintiff is a member of the Class and will fairly and adequately protect the interests of the members of the Class. The interests of the Plaintiff are coincident with, and not antagonistic to, those other members of the Class. Plaintiff have retained attorneys who are experienced in class action litigation. Plaintiff will fairly and adequately represent and protect the interest of the Plaintiff Class. Plaintiff is an adequate representative of the Class, as he does not have interests that are adverse to the interests of the Class. Plaintiff is committed to the vigorous prosecution of this action and have retained counsel who are competent and experienced in handling complex and class action litigation on behalf of consumers.

(5)    <u>Superiority and Substantial Benefit</u>: The prosecution of separate actions by individual members of the Class would create a risk of: (1) Inconsistent or varying adjudications concerning individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class; and (2) Adjudication with respect to the individual members of the Class would substantially impair or impede the ability of other members of the Class who are not parties to the adjudications to protect their interests.

The class action method is appropriate for the fair and efficient prosecution of this action. Individual litigation of the claims brought herein by each Class Member would produce such a multiplicity of cases that the judicial system having jurisdiction of the claims would remain congested for years. Class treatment, by contract provides manageable judicial treatment calculated to bring a rapid conclusion to all litigation of all claims arising out of the aforesaid conduct of Defendants. The certification of the Class would allow litigation of claims that, in view of the expense of the litigation may be sufficient in amount to support separate actions.

## FACTUAL ALLEGATIONS

### A. <u>Defendant's Development of the Compound Brakes</u>

30.    Plaintiff files this class action on behalf of himself, all others similarly situated, and the general public for damages and/or restitution, as appropriate, for the Class from Defendant BMW of North America, LLC (hereinafter "BMW") for developing, designing, manufacturing, distributing, and selling vehicles with a defective brake system ("Subject Vehicle(s)" or "Class Vehicle(s)") and Defendant Valencia BMW and Pacific BMW (hereinafter "Dealers") for selling and/or leasing vehicles with the defective brake system.

31.    Beginning on or before 2013, BMW manufactured, sold, and distributed vehicles that contain defective M Compound Brakes that results in a loud, high-pitched squealing noise from the brakes, directly affecting the safety, reliability, and use and enjoyment of the vehicle.

32.    The Class Vehicles contain one or more design and/or manufacturing defects, including but not limited to defects contained in the Class Vehicles' M Compound Brakes that cause a loud squealing noise when the brakes are applied.

33.    The Class Vehicles have been designed by BMW, by and through its designers and engineers, including, but not limited to, Adam McNeil (Vice President of Engineering) and Klaus Dullinger (M Engineer). The descriptions of the Class Vehicles which fail to describe the high-performance brakes as noisy have been written and designed by BMW, by and through its team of marketing personnel, including, but not limited to, Adam Sykes (Vice President of Corporate Communications) and Uwe Dreher (Vice President of Marketing). Other key members include

Bernhard Kuhn (President and Chief Executive Officer of BMW NA) and David Duncan (Department Head, Corporate and Special Sales).

34.    The M Compound Brakes have fixed-caliper brakes fitted onto both the front and rear axles. The front axle holds four pistons while the rear axle has two pistons. The setup is a supposed significant performance increase compared to the predecessor where the axles had heavy single-piston sliding calipers.

35.    According to Klaus Dullinger, the BMW M Engineer responsible for the development of the new standard BMW M Compound Brake system: "M compound brakes have a grey-cast friction ring in a floating arrangement that is connected by pins to the aluminum brake cover. The pin assembly means that as the temperature increases, it can expand freely in a radial direction and subsequently cool down again without any residual deformation."

36.    On its North American website, BMW states "A high performance vehicle requires a high-performance brake system. The M Compound brakes are high performance brake systems developed for sports and dynamic driving. We select highly resilient materials with an emphasis on performance over a wide range of operating conditions."

37.    Despite the intent to create high performance brake systems the M Compound brakes are made from materials that cause noises and are anything but high performance.

38.    According to BMW, on the first full tank of gas, it is advised that drivers should restrain from using the maximum deceleration on the brakes and avoid hard emergency braking to allow the M Compound Brakes a "running-in" period. This is when the brake pads get accustomed to the brake discs.

39.    The Class Vehicles were manufactured with defective M Compound Brakes. This defect renders the Class Vehicles prone to constant loud, high-pitched squealing noises which poses serious safety issues for operators and occupants of the Class Vehicles.

40.    In many instances, consumers have incurred and will continue to incur expenses for the diagnosis of the Brake Defect, repair, and replacement of the Subject Brakes, despite such defect having been contained in the Class Vehicles when manufactured by Defendant BMW.

41.    Upon information and belief, Defendant BMW, through (1) its own records of customers'

complaints, (2) dealership repair records, (3) records from the National Highway Traffic Safety Administration ("NHTSA"), (4) warranty and post-warranty claims, (5) pre-sale durability testing, and (6) other various sources, was well aware of the Brake Defect but failed to notify consumers of the nature and extent of the problems with the Class Vehicles' Subject Brakes or provide any adequate remedy.

42.    Defendant BMW failed to adequately research, design, test, and/or manufacture the Class Vehicles before warranting, advertising, promoting, marketing, and selling the Class Vehicles as suitable and safe for use in an intended and/or reasonably foreseeable manner.

43.    BMW is experienced in the design and manufacture of consumer vehicles. As an experienced manufacturer, BMW conducts tests, including pre-sale durability testing, on incoming components, including the camshaft adjuster bolts, to verify the parts are free from defect and align with BMW's specifications.[2] Thus, BMW knew or should have known the Compound Brakes were defective and prone to put drivers in a dangerous position as a result of the inherent risk of the Brake Defect.

44.    Additionally, Defendant BMW should have learned of this widespread defect from the sheer number of reports received from dealerships. Defendant BMW's customer relations department, which interacts with individual dealerships to identify potential common defects, has received numerous reports regarding the Brake Defect, which led to the release of the technical service bulletin ("TSB"). BMW's customer relations department also collects and analyzes field data including, but not limited to, repair requests made at dealerships, technical reports prepared by engineers who have reviewed vehicles for which warranty coverage is being requested, parts sales reports, and warranty claims data.

45.    Defendant BMW's warranty department similarly analyzes and collects data submitted by its dealerships in order to identify trends in its vehicles. It is Defendant BMW's policy that when a repair is made under warranty, the dealership must provide BMW with detailed documentation of the problem and the fix employed to correct it. Dealerships have an incentive to provide detailed

---

[2] Akweli Parker, *How Car Testing Works*, HOWSTUFFWORKS.COM, http://auto.howstuffworks.com/car-driving-safety/safety-regulatory-devices/car-testing.htm ("The idea behind car testing is that it allows manufactures to work out all the kinks and potential problems of a model before it goes into full production.") (last viewed June 24, 2021).

information to Defendant BMW because they will not be reimbursed for any repairs unless the justification is sufficiently detailed.

46.     Defendant BMW expressly warranted that the Class Vehicles' brakes would be free from defects for a period of four (4) years or 50,000 miles, whichever comes first ("New Car Limited Warranty" or "NCLW").

47.     While the NCLW precludes coverage for noises that are normal and characteristic to the product, the noise that originates from the Brake Defect is incorrectly labeled normal and is not the noise the NCLW talks of. BMW says some squealing is inevitable, but noise that is normal and characteristic of a vehicle is intermittent not excessive as is the case here. In fact, Plaintiff's brakes have consistently squealed now for more than three years and there is no indication that they will ever stop squealing.

48.     Buyers, lessees, and other owners of the Class Vehicles were without access to the information concealed by Defendant BMW as described herein, and therefore reasonably relied on Defendant BMW's representations and warranties regarding the quality, durability, and other material characteristics of their vehicles. Had these buyers and lessees known of the defect and the potential danger, they would have taken steps to avoid that danger and/or would have paid less for their vehicles than the amounts they actually paid or would not have purchased the vehicles.

**B.   Defendant's Knowledge of Plaintiff's Personal Issue With the M Compound Brakes**

49.     Plaintiff acquired the Subject Vehicle on November 4, 2020 from Valencia BMW, located and doing business at 23435 Valencia Boulevard, Valencia, CA 91355.

50.     Plaintiff made his decision to lease the Subject Vehicle, in part, in reliance on representations communicated through Defendant BMW's advertisements and marketing campaigns emphasizing the quality, reliability, and safety of Defendant BMW's vehicles.

51.     Prior to leasing the vehicle, Plaintiff did not know that the Subject Vehicle suffered from the Brake Defect and did not contemplate that the Subject Vehicle would cause extreme noise disturbances while braking even when virtually brand new.

52.     On November 18, 2020, Plaintiff brought the Subject to Pacific BMW located and doing business at 800 South Brand Boulevard, Glendale, CA 91204, for repair. The Subject Vehicle had 595

miles on it at this time.

53.    On December 30, 2020, Plaintiff again brought the Subject Vehicle to Pacific BMW for repair. The Subject Vehicle had 2,413 miles on it at this time.

54.    On January 12, 2021, Plaintiff again brought the Subject Vehicle to Pacific BMW for repair. The Subject Vehicle had 2,826 miles on it at this time.

55.    On January 19, 2021, Plaintiff again brought the Subject Vehicle to Pacific BMW for repair. The Subject Vehicle had 3,218 miles on it at this time.

56.    On February 18, 2021, Plaintiff again brought the Subject Vehicle to Pacific BMW for repair. The Subject Vehicle had 5,124 miles on it at this time.

57.    On February 22, 2021, Plaintiff again brought the Subject Vehicle to Pacific BMW for repair. The Subject Vehicle had 5,193 miles on it at this time. Technician Reynaldo Soto inspected the brakes and told Plaintiff that the squeaking is normal function of BMR performance brakes and referred Plaintiff to the brochure on bulletin 34 10 19.

58.    On April 6, 2021, Plaintiff again brought the Subject Vehicle to Pacific BMW for repair. The Subject Vehicle had 6,136 miles on it at this time.

59.    On April 27, 2021, Plaintiff again brought the Subject Vehicle to Pacific BMW for repair. The Subject Vehicle had 7,084 miles on it at this time.

60.    On June 8, 2021, Plaintiff again brought the Subject Vehicle to Pacific BMW for repair. The Subject Vehicle had 8,044 miles on it at this time.

61.    On July 9, 2021, Plaintiff again brought the Subject Vehicle to Pacific BMW for repair. The Subject Vehicle had 9,439 miles on it at this time. Technician Edgar Arcos Valentin inspected the brakes and told Plaintiff that the squeaking is normal function of BMR performance brakes and referred Plaintiff to the brochure on bulletin 34 10 19.

62.    The Subject Vehicle was within the term of the NCLW during all repairs.

63.    After a reasonable number of repairs, Plaintiff is left with a vehicle that remains defective as it still continues to make the loud, high-pitched squealing noise.

64.    Plaintiff had at all times driven the Subject Vehicle in a reasonable, ordinary manner, and not in any way which could cause premature failure of her brakes.

65.    The loud, high-pitched squealing noise emitted when braking impacted Plaintiff's driving decisions, including, but not limited to, altering the use of his brakes in anticipation of the extremely loud and distracting noise and in fear that the noise is symptomatic of a safety issue affecting the performance and reliability of the braking system.

**C.  The M Compound Brakes Are Defective**

66.    The M Compound Brakes were not designed to emit a permanent loud, high-pitched squealing noise. Whether on racetracks or country roads, the high-performance BMW M Compound Brake and BMW M Carbon Ceramic Brake systems were designed to provide sporty dynamics in BMW M cars. None of this, however, excuses the fact that the Subject Brakes are defectively designed.

67.    A design defect often stems from the manufacturing company's desire to save time or cut costs. The design of the brake system might use poor-quality parts, for example, or cut corners to save money. If brakes have design flaws, they can be inherently dangerous to consumers even if no manufacturing errors occur.

68.    In this instance, the design defect is pertinent because it impairs the value of the vehicle.

69.    In California, a vehicle is defective if it impairs the value of the vehicle. In other words, the defect must diminish the vehicle's resale value more than a significant amount below the typical resale value for comparable vehicles.

70.    Squeaky brakes can occur for many reasons. Most brake pads are designed to start making noise when they are worn down to the last 25%. This squeaky or squealing noise can be an indicator that it is time to have your brakes inspected and possibly replaced. Common causes of squeaky brakes include: worn out pads, brake rotor rust, hard braking, or long-life brake pads.

71.    While some brake noise is normal, there are times when it could be a cause for concern. Unusual brake noise serves as a warning that one of the most essential systems in a vehicle is malfunctioning.

72.    Brake squealing can be caused by a number of things including but not limited to inferior pads, an improper rotor, lack of adhesive, and/or a mistake in the assembly of the brakes during manufacturer. For example, if the rotors are warped (meaning not perfectly flat) or severely worn, they

may produce squealing or squeaking sounds. Usually, warped rotors will produce a squeak, while severely worn rotors will produce a scraping sound. The squealing noise can also originate from defective brake pads as well, as it appears is the case here.

73.    Here, the Subject Brakes make a loud squealing noise which generally speaking would indicate to the consumer that the Subject Brakes need to be fixed because the brake pads are worn out. The Subject Brakes, however, squeal for no apparent reason. This is problematic because consumers rely on the squealing noises to indicate when the brakes need to be repaired. If the brakes always squeal, then consumers will not know when the brakes need to be fixed.

74.    One of the most common causes of brake squeak are worn out brake pads that need to be repaired. Worn out brake pads are dangerous for two reasons. First, worn out brake pads and cause extensive rotor damage which can be a costly expense. Second, if the consumer continues to drive with squealing brakes because they are told that is normal, when in reality there is a major issue with the brake pads, the consumer is at higher risk of getting into an accident because now the brakes do not serve the purpose for which they were designed.

75.    As such, the Subject Brakes are defective and make the loud squealing noises because they are designed incorrectly.

76.    Under the Transportation Recall Enhancement, Accountability and Documentation Act ("TREAD Act"), 49 U.S.C. §§ 30101-30170, and its accompanying regulations, when a manufacturer learns that a vehicle contains a safety defect, the manufacturer must properly disclose the defect. 49 U.S.C. §§ 30118(c)(1) & (2). If it is determined that the vehicle is defective, the manufacturer must notify vehicle owners, purchasers, and dealers of the defect and must remedy the defect. 49 U.S.C. §§ 30118(b)(2)(A) & (B).

77.    Upon information and belief, Defendant BMW violated the TREAD Act by failing to timely inform NHTSA of the Brake Defect and allowed the defective Class Vehicles to remain on the road. These same acts and omissions also violated various state consumer protection laws as detailed below.

78.    Defendant BMW has long known that the Class Vehicles have a defective braking system. Defendant BMW has exclusive access to information about the defects through its dealerships, pre-release testing data, warranty data, customer complaint data, and replacement part sales data, among

other sources of aggregate information about the problem. In contrast, the Brake Defect was not known or reasonably discoverable by Plaintiff and Class Members prior to purchase and without experiencing the Brake Defect firsthand.

79.     Defendant BMW owes a duty to properly disclose the Brake Defect to Plaintiff and Class Members because Defendant BMW has exclusive knowledge or access to material facts about the Vehicles that are not known or reasonably discoverable by Plaintiff and Class Members until the defect has manifested; and because Defendant BMW has actively concealed the Brake Defect from its customers. Improperly operating brakes on a vehicle are per se a safety defect.

80.     Defendant BMW's contention that the brakes are not defective puts Plaintiff, Class Members, and other consumers at an extreme risk of danger in that they will rely on Defendant BMW's notion that the brakes are normal and will not bring the Class Vehicles in for repair. In essence, Plaintiff and Class Members will ignore the tell-tale signs that the brake system is failing because Defendant BMW is telling them the noise is normal and there is no repair needed. As such, Plaintiff and Class Members will continue to drive the Class Vehicles with the defective brake systems putting themselves and others on the road in the zone of danger.

81.     As a result of the Brake Defect, Plaintiff and Class Members, either consciously or unconsciously, and in whole or in part, make driving decisions based upon the likelihood, duration, and severity of the noise that is emitted when they use their brakes. This powerful and startling environmental distraction while operating an automobile makes the Class Vehicles unreasonably dangerous and unable to meet a minimum level of quality or safety.

82.     As a result of the Brake Defect, Plaintiff and Class Members complain about the amount of negative attention the noise from the Subject Brakes attracts while driving in crowded streets within city limits. Additionally, the defect draws the attention of officers of law enforcement agencies, who associate brake squeals with high-speed driving and racing.

83.     As a result of the Brake Defect, Plaintiff and Class Members have been advised to apply the brakes on their Vehicles in an extreme and unsafe manner in an effort to fix the Brake Defect.

84.     As a result of their reliance on Defendant BMW's omissions, owners and/or lessees of the Class Vehicles have suffered ascertainable loss of money, property, and/or loss in value of their

Vehicles.

85.    Plaintiff and the Class have been damaged by Defendant BMW's concealment, and non-disclosure of the Brake Defect in the Class Vehicles, as they now have vehicles whose value has greatly diminished because of Defendant BMW's failure to timely and properly disclose the serious Brake Defect.

86.    Had Plaintiff and the Class Members known about the Brake Defect at the time of sale or lease, as well as the associated costs related to the Brake Defect, Plaintiff and the Class Members would not have purchased the Class Vehicles or would have paid less for them.

87.    As a result of Defendant BMW's practices, Plaintiff and Class Members purchased vehicles they otherwise would not have purchased, paid more for those vehicles than they would have paid, were subjected to an unreasonable risk to their safety, and unnecessarily paid and will continue to pay repair costs as a result of the Brake Defect. They did not receive the benefit of their bargain.

D.    **Defendant's Knowledge of the Issue with the M Compound Brakes and The Attempt to "Normalize" The Brake Defect**

88.    Plaintiff is informed and believes and based thereon alleges that BMW acquired its knowledge of the brake noise defect as of 2013, if not before, through sources not available to Class Members, including but not limited to pre-release testing data, early consumer complaints about the brake noise defect, testing conducted in response to those complaints, aggregate data from BMW dealers, including dealer repair orders and high warranty reimbursement rates that can cost in the thousand dollars for each class vehicle, and from other internal sources.

89.    Plaintiff's experience is by no means an isolated or outlying occurrence. Indeed, the internet is replete with examples of blogs and other websites where consumers have complained of the exact same Brake Defect within the Class Vehicles.

90.    Consumer complaints also indicate Defendant BMW's awareness of the defect and its potential danger.

- "I have a 2020 M8 Convertible with 4,500 miles. After the initial 1,200 miles when I slow brake (at the end of the stop) My brakes sound squeak like a bus. Took it to the

dealer twice and they said it was normal. $150,000 car with squeaking brakes. Does anyone else have this problem?"[3]

- "Lol are you new to M cars? It should not be normal but it happens more often than needed. Have your dealer replace the pads and rotors if possible. This might fix the problem but not likely. Or have them clean and lube it. Most people switch to higher grade performance pads to fix the problem."[4]

- "The same issue with noisy brakes occurs with the M5 (F90). There are many posts over on the F90 forum. Besides the noisy brakes when slowing to a stop with the steel brake pads they also produce more brake dust. I installed the Portfield RS-4 brake pads (front and rear) last December and could not be happier. Brake squeal has been 99% eliminated and brake dust has been greatly reduced. I do not track my M5 but I do engage in spirited driving and have not experienced any reduction in braking / stopping performance. Having owned a M3 (F80) for 4 years with the steel brake pads I never experienced the noise of coming to stop like I did with the stock brake pads on my M5."[5]

- "I finally convinced BMW to replace both pad and drums!! It only lasted for about 1300 miles and the same noise is back. My next move is after market brake pads."[6]

- "Yes, same thing is happening with mine. As others stated, it is very embarrassing. I asked dealer and was told that because of the heavy amount of brake dust and the size of the brakes, there is nothing that can be done except to brake later!???? Between the

---

[3] BIMMER FEST, *M8 and 8 Series*, (Nov. 9, 2020) (Discussion #1)
https://f92.bimmerpost.com/forums/showthread.php?s=98d2f1e10f1b841d3e8dab10eb2b9406&t=1773637.

[4] BIMMER FEST, *M8 and 8 Series*, (Nov. 9, 2020) (Discussion #2)
https://f92.bimmerpost.com/forums/showthread.php?s=98d2f1e10f1b841d3e8dab10eb2b9406&t=1773637.

[5] BIMMER FEST, *M8 and 8 Series*, (Nov. 20, 2020) (Discussion #10)
https://f92.bimmerpost.com/forums/showthread.php?s=98d2f1e10f1b841d3e8dab10eb2b9406&t=1773637.

[6] BIMMER FEST, *M8 and 8 Series*, (Apr. 24, 2021) (Discussion #13)
https://f92.bimmerpost.com/forums/showthread.php?s=98d2f1e10f1b841d3e8dab10eb2b9406&t=1773637.

1    squeaks from the seats and the brakes, and rattles and crackling from the speakers, I

2    have to say that these little issues are starting to cause me to sour on the car a bit."[7]

3    91.    Apart from demonstrating how widespread the defect is, most of the online complaints

4    demonstrate that ordinary consumers were not informed, nor did they expect for their vehicles to

5    produce a loud, high-pitched squealing noise when braking. The online complaints also demonstrate

6    how the defect affects the safety, as well as the use and enjoyment of the Class Vehicles and the

7    annoyance that the defect causes to a reasonable person that purchased or leased a Class Vehicle.

8    92.    Defendant BMW has a duty to properly disclose the Brake Defect and remedy the

9    associated out-of-pocket repair costs to Class Vehicle owners for many reasons including the fact that

10    the defect poses an unreasonable annoyance. BMW had and has exclusive knowledge or access to

11    material facts about the Class Vehicles and the Brake Defect that were and are not known or reasonably

12    discoverable by Plaintiffs and Class Members and has actively concealed the brake noise defect from

13    its customers.

14    93.    Defendant BMW knew of the defects in their brakes, including the brakes' likelihood of

15    producing sudden and prolonged squealing, before selling the Class Vehicles to Plaintiff and the Class

16    and installing them on their cars, but did not properly disclose this fact to Plaintiff and the Class prior to

17    their purchase. Instead, Defendant BMW classified the noise as "normal" and tried to shrug off all

18    responsibility associated with the Brake Defect.

19    94.    Through several Technical Service Bulletins ("TSB") BMW has admitted that the loud,

20    squealing noise is normal and not an issue. There is no reason, however, that brakes that are "normal"

21    should squeal. Brakes are not designed that way. If it was, then EVERY brake on the market would be

22    squealing.

23    95.    The following TSB indicates that BMW was aware of the defect and insist that such defect

24    is in fact normal. Upon information and belief, most often TSBs are only in the possession and control

25    of Defendant BMW and its authorized service centers. Discovery in this matter should reveal whether

26    more TSBs related to the Brake Defect have been issued and when exactly Defendant BMW first

27    learned of this pervasive problem in the Class Vehicles.

28

---

[7] 6Post, *BMW 6-Series Forum M6 (F12/F13)* (Jan. 28, 2013) https://www.6post.com/forums/showthread.php?t=796066.

PLAINTIFF KARAMANOUKIAN'S CLASS ACTION COMPLAINT FOR DAMAGES

96.    **TSB #B341019** (November 1, 2019): "Inform the customer during a consultation that the M Compound (standard equipment) and M Carbon Ceramic (optional) brakes are high-performance brake systems which are designed for sport, dynamic driving styles. As a side effect of the highest possible brake performance, customers are likely to hear noises due to the extremely resilient materials. In the same conversation, inform the customer that his/her braking performance can help ensure that the noises do not occur or disappear quickly."

97.    According to this TSB, it takes the M Compound Brakes approximately 310 miles until the running-in is completed and the full braking effect of the brake system is reached. During this phase, drive with caution as otherwise the brake can make squeaking noises. Those will disappear after a certain operating period.[8]

98.    Plaintiff took the vehicle in for repair several times regarding the squeaky brakes. Most recently, Plaintiff took the vehicle in for repair after driving the vehicle 9,439 miles. This is roughly 9,000 miles more than BMW claims it takes for the M Compound Brakes to be broken in.

99.    There is no reason the M Compound Brakes should continue to make the loud squealing noises after the breaking in period.

100.    Defendant BMW's attempt to "normalize" the Brake Defect is extremely problematic and a huge part of the problem as to why the Class Vehicles are not safe and why they are not of the quality that a buyer would reasonably expect.

101.    By classifying the Brake Defect as normal, Defendant BMW is putting Plaintiff and Class Members, other drivers, third parties, and pedestrians on the roads in great danger. The loud, high-pitched squealing noise emitted when braking impacts Plaintiff's and Class Members' driving decisions, including, but not limited to, altering the use of their brakes in anticipation of the extremely loud and distracting noise and in fear that the noise is symptomatic of a safety issue affecting the performance and reliability of the braking system. The sudden, loud, and prolonged squealing is disturbing and intrusive to the driver, passenger(s), as well as to other people and even animals in the vicinity, including children and the elderly who are often particularly vulnerable to the sudden loud,

---

[8] M Skills Vol. 7, *High Performance Braking Systems for BMW M* (Jul. 22, 2019) https://www.bmw-m.com/en/topics/magazine-article-pool/high-performance-braking-systems-from-bmw-m.html

high-pitched squealing noise s that may distract them from other hazards on or near roadways

102.    Had Defendant BMW, Valencia BMW, and Pacific BMW properly informed Plaintiff and the Class about the Brake Defect, Plaintiff and the Class would not have purchased the Vehicles from Defendant BMW, Valencia BMW, and Pacific BMW, but rather would have purchased different vehicles. Defendant BMW, Valencia BMW, and Pacific BMW knowingly sold a defective product to Plaintiff and the Class, without properly disclosing such defect, and now refuse to provide an adequate long-term remedy, repair, or restitution for their actions.

103.    Defendant BMW, Valencia BMW, and Pacific BMW's conduct described herein constitutes an omission of material fact and a deceptive business practice in violation of the California statutory law and California common law.

**E.   The Brake Defect Has Harmed Plaintiff and The Class**

104.    The Brake Defect has caused injury to Plaintiff and the Class.

105.    A vehicle purchased, leased, or retained with a material defect is worth less than the equivalent vehicle leased, purchased, or retained without the defect.

106.    Purchasers and lessees paid more for the Vehicles, through a higher purchase price or higher lease payments, than they would have had the Brake Defect been properly disclosed. Plaintiff and the Class overpaid for their Vehicles. Because of the misrepresentation regarding the Brake Defect, Plaintiff and the Class did not receive the benefit of their bargains.

107.    Class Members who purchased new or used Class Vehicles overpaid for their vehicles as a direct result of Defendant BMW's ongoing violations of the TREAD Act and state consumer protection laws by failing to disclose the existence of the Brake Defect.

108.    Plaintiff and the Class have been denied the use and enjoyment of the Vehicles, suffering distractions by driving Vehicles that emit loud and disturbing squealing noises when the brakes are applied, and being advised by Defendant BMW, Pacific BMW, and/or its agents to drive the Vehicles in an unsafe manner.

109.    The sudden, loud, and prolonged squealing is disturbing and intrusive to the driver, passenger(s), as well as to other people and animals in the vicinity, including children and the elderly who are often particularly vulnerable to the sudden loud, high-pitched squealing noise s that may

distract them from other hazards on or near roadways.

110.    The Class Vehicles were worth less than they would have been but for Defendant BMW's and Pacific BMW's failure to properly disclose and remedy the Brake Defect.

## FACTS COMMON TO ALL CAUSES OF ACTION

111.    BMW develops, designs, manufactures, markets, advertises, distributes, and sells various models of vehicles, including the Class Vehicles identified herein that were manufactured and/or equipped with Compound Brakes.

112.    Plaintiff is informed, believes, and based thereon alleges the Class Vehicles contain a brake system comprised of defective components resulting in the loud, high-pitched squealing noise.

113.    As a part of BMW's advertising campaign, through its controlled dealership network, BMW distributed to the Class members numerous pamphlets, brochures, and specification sheets which emphasized or focused on the quality and safety of the Class Vehicles here at issue.

114.    The written materials distributed and disseminated by Defendant BMW in their advertising campaign(s) created express warranties as to the reliability, excellence, and safety of the Class Vehicles at issue and that the components of such vehicles are free from inherent risk of failure, particularly with regard to use and safety. Such warranty was breached by the existence of the defect in the Class Vehicles at issue and BMW's failure to properly warn consumers of its existence.

115.    These advertisements, due to the national scope and extent of Defendant's multi-media campaign, were uniformly made to all members of the Class. Class members' acts of leasing and/or purchasing the Class Vehicles were consistent with basing such decisions upon such advertisements, and thus formed part of the basis for the transaction at issue.

116.    Plaintiff is informed, believes, and based thereon alleges that the loud, high-pitched squealing noise generated by the brake system on the Class Vehicle is due, in part, to the defective brake components installed on the Class Vehicles.

117.    At all relevant times, BMW has been aware of the herein described defect in the brake system on the Class Vehicles and has consciously disregarded the rights and safety of Plaintiff, members of the Class, and the general public in that numerous complaints about the loud, high-pitched squealing noise and defective brake system in the Class Vehicles have been lodged with BMW. Despite

1    said knowledge, BMW, however, has failed to notify owners and lessees of the Class Vehicles of the

2    defects associated with their continued operation as alleged herein.

3        118.    At all relevant times, BMW has not fully disclosed to purchasers or lessees of the Class

4    Vehicles, information regarding the high incidence of the loud, high-pitched squealing noise generated

5    by the brakes of the Class Vehicles as detailed herein, nor has it disclosed the true facts that BMW

6    either knew or recklessly or negligently disregarded the existence and reasons for this inherent defect

7    for years.

8        119.    Plaintiff is further informed, believes, and based thereon alleges that in not correcting or

9    warning of this defect, BMW has violated its own internal procedures, which require prompt

10   investigation and thorough analysis of all potential defects and notification to vehicle owners and

11   lessees describing the defect, as well as instructions relating to the correction of the defect if a defect is

12   determined to exist.

13       120.    Defendant BMW's conduct, as fully described herein, is in violation of Cal. Civ. Code §

14   1795.90 *et seq*. (California's Secret Warranty Law) which was enacted to abolish "secret" warranties

15   and practices as alleged herein. The term "secret warranty" is used herein to describe the practice by

16   which an automaker, such as Defendant BMW, establishes a policy to pay for the repair of that defect

17   without making the defect or the policy known to the public at large. A secret warranty is usually

18   created when the automaker, such as BMW, realizes that a large number of its customers are

19   experiencing a defect not otherwise covered by a factory warranty, and decides to offer warranty

20   coverage to individual customers only if the customer complains about the problem first. The warranty

21   is therefore considered "secret" because owners are not notified of it. Instead, the automaker usually

22   issues a service bulletin to its regional officers and/or dealers on how to deal with the defect. Because

23   owners are kept in the dark about the cost-free repair, the automaker only has to reimburse those

24   customers who complain loudly enough. The quiet consumer instead pays to fix the defect her or

25   herself.

26       121.    Section 1795.92 of the California Secret Warranty Law imposes several duties on

27   automakers, including BMW, each of which is designed to do away with secret warranties.

28       122.    Specifically, the California Secret Warranty Law requires automakers to notify all eligible

owners and lessees ("consumers") by first class mail, within 90 days of adoption, whenever they enact "any program or policy that expands or extends the consumer's warranty beyond its stated limit or under which [the] manufacturer offers to pay for all or any part of the cost of repairing, or to reimburse consumers for all or any part of the cost of repairing, any condition that may substantially affect vehicle durability, reliability, or performance[.]"

123.     The California Secret Warranty Law also requires automakers, including BMW, to provide the New Motor Vehicle Board with a copy of the notice described in the preceding paragraph, so the public can view, inspect, or copy that notice.

124.     Additionally, the California Secret Warranty Law requires automakers, including BMW, to advise their dealers, in writing, of the terms and conditions of any warranty extension, adjustment, or reimbursement program.

125.     The California Secret Warranty Law also requires an automaker, such as BMW, to "implement procedures to assure reimbursement of each consumer eligible under and adjustment program who incurs expenses for repair of a condition subject to the program prior to acquiring knowledge of the program."

126.     Plaintiff is informed, believes, and based thereon alleges that BMW has, when the customers have complained loudly enough, offered to pay for all or any part of the cost of defective brake replacement or repair for the Class Vehicles and therefore, BMW is obligated to comply with the provisions of the California Secret Warranty Law, but has not done so. Moreover, by extending its new car warranty to cover brake system replacement or repair to some customers and not others, BMW has expanded or extended the consumer's express warranty beyond its stated limit.

127.     Specifically, BMW did not notify Plaintiff, or any other owner or lessee, of a Class Vehicle of their right to seek a free repair, replacement, or retrofit of the brake system, or to be reimbursed for the cost of repairing the brake system in these vehicles.

128.     It was only after a class vehicle owners or lessors complained vehemently that BMW made efforts to repair Class Vehicle's brake system or replace it during each complaint thereof.

129.     BMW, by and through its authorized dealerships, engaged in a nationwide conspiracy to cover up the Class Vehicles' brake defect by systematically refusing to document visits by Plaintiff and

1    other Class Members with the subject complaint.

2    130.    By failing to document these visits and provide repair orders BMW systematically deprived

3    Plaintiff and other Class Members of their lemon law rights by distorting the Class Vehicles' repair

4    histories.

5    131.    At all times relevant, Plaintiff is informed, believes, and based thereon allege that BMW has

6    not, and did not, comply with the dealer notification provisions of the California Secret Warranty Law,

7    nor has BMW sent a copy of a Service Bulletin to the New Motor Vehicle Board.

8    132.    At all times relevant, Plaintiff is informed, believes, and based thereon alleges that BMW

9    has refused to provide the free repair, replacement, or retrofitting of the brake system to owners of the

10   affected vehicles and has refused to reimburse consumers who have paid to have the brake systems

11   repaired in their vehicles except for some who complained enough.

12   133.    Knowing the truth and motivated by profit and market share, Defendant BMW, Valencia

13   BMW, and Pacific BMW have knowingly and willfully engaged in the acts and/or omissions to mislead

14   and/or deceive Plaintiff and others similarly situated.

15   134.    The defective brake system on the Class Vehicles has resulted, and will continue to result, in

16   significant loss and damage to the Class Members, including but not limited to, diminished use and

17   reduced fair market value.

18   135.    Despite the Defendant BMW's, Valencia BMW's, and Pacific BMW's express

19   representations that the Class Vehicles would likely retain their value at a rate higher than competing

20   vehicles and that the vehicles are "reliable," this has simply not occurred. As a result of the problems

21   with the Class Vehicles as described herein and the extremely loud brake squeal noise, the value of the

22   Class Vehicles has been significantly diminished. On the Internet and in other media outlets, hundreds

23   of people have reported the problems they have experienced with their vehicles. There is little doubt

24   that these reports have seriously diminished the resale value of the Class Vehicles. Given the high value

25   and the luxury status of Class Vehicles, the fact that these vehicles produce extremely loud, high-

26   pitched squealing noise s when braking under normal conditions diminishes the value of the vehicles

27   more than the same problems would in lower valued vehicles.

28   136.    As a result of the Brake Defect, Plaintiff and all other Class Members suffered economic

injury because they bought a defective vehicle they otherwise would not have bought and/or paid more for the Class Vehicle than they should have because the defect depreciated the value of the Class Vehicles. Plaintiff and other Class Members have also spent money to have the brakes of the vehicles repaired or replaced much more frequently than conventional counterparts.

137.    This action seeks financial compensation for members of the Class in connection with their purchase of the Class Vehicles. Plaintiff does not seek: (i) damages for personal, bodily, or emotional injury or wrongful death; or (ii) damages for becoming subject to liability or legal proceedings by others.

## TOLLING OF STATUTE OF LIMITATIONS

138.    Any applicable statutes of limitation have been equitably tolled by BMW's affirmative acts of fraudulent concealment, suppression, and denial of the facts alleged herein.  Such acts of fraudulent concealment include but are not limited to intentionally covering up and refusing to publicly disclose critical internal memoranda, design plans, studies, Notices of Action, Problem Detail Reports and other reports of failure and injury, as well as affirmative misrepresentations made to NHTSA and people who called or otherwise contacted BMW attempting to identify and resolve this defect. Through such acts of fraudulent concealment, BMW was able to actively conceal from the public for years the truth about the defective design and manufacture of the brake system on the Subject Vehicles, thereby tolling the running of any applicable statute of limitations.

139.    Defendants are estopped from relying on any statutes of limitation because of their misrepresentation and fraudulent concealment of the true facts, as described herein, concerning the brake system on the Subject Vehicles. Defendants were at all times aware of the true nature of the defects as described herein but at all times continued to manufacture and market the Subject Vehicles despite this knowledge.

## FIRST CAUSE OF ACTION

### FRAUD AND DECEIT

*(Against All Defendants)*

140.    Plaintiff re-alleges and incorporates by reference as fully set forth herein all paragraphs of Plaintiff's Complaint for Damages.

-28-

141.  California Civil Code § 1710 identifies four kinds of fraud: (1) intentional misrepresentation, (2) concealment, (3) false promise, and (4) negligent misrepresentation.

142.  Intentional misrepresentation occurs when a defendant represents to another that a fact was true; the representation was actually false; the defendant knew the representation was false (or was reckless about its truth); the defendant intended the other person to rely on the statement; the other person did rely on the statement; the other person was harmed by the reliance; or the other person's reliance on the defendant's representation was a substantial factor in causing the harm suffered. See Civ. Code, § 1710(1); *Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.

143.  The particularity requirement for fraud requires the pleading of facts showing how, when, where, to whom, and by what means the representations were made. (Stansfield v. Starkey (1990) 220 Cal.All.3d 59, 73.) Every element of fraud herein with specificity have been plead as follows:

   a.  How: On November 4, 2020, Plaintiff visited Valencia BMW with the intent to acquire a vehicle for personal use. Plaintiff spoke with Valencia BMW's Client Sales Rep Katie Durand and Finance Director Nikhil Ahuja, who were following the fraudulent scheme designed by Defendant BMW to misrepresent the Brake Defect. The General Sales Manager and the Finance Director at Valencia BMW verbally represented to Plaintiff that the Subject Vehicle was free from defects, that it was safe, reliable, and fit for its ordinary purpose. The representatives from Valencia BMW said nothing about the loud, high-pitched squealing noises the Class Vehicles make. In fact, they continued to make promises that the Compound Brakes were exceptional high-performance brakes and that the Subject Vehicle was safe, reliable, and fit for its ordinary purpose.

   b.  When: At the time of leasing the Subject Vehicle (on November 4, 2020). Misrepresentations were further made via the TSB on November 1, 2019.

   c.  Where: The oral discussions about the safety, quality, and reliability of the Subject Vehicle took place at Valencia BMW, located at 23435 Valencia Boulevard, Valencia, CA 91355.

   d.  To Whom: The statements were made to Plaintiff and Class Members by the

representatives at Valencia BMW and Defendant BMW. The statements were confirmed by representatives at Pacific BMW when the Plaintiff took the Subject Vehicle in for repair.

e. What Means: The discussions were made by use of English language, simple words, specifically Plaintiff was told by the representatives at Valencia BMW that the Subject Vehicle was safe, reliable, and fit for its ordinary purpose and that the Compound Brakes were exceptional high-performance brakes. Defendant BMW also made these misrepresentations in the TSBs they released about the brakes.

144. The requirement of specificity in a fraud action against a corporation requires the plaintiff to allege the names of persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written. (Tarmann v. State Far Mut. Auto. Ins. Co. (1991) 2 Cal.App.4th 153, 157.)

a. Names of Persons: Plaintiff spoke with Valencia BMW's Client Sales Rep Katie Durand and Finance Director Nikhil Ahuja ("Finance Director"), who were following the fraudulent scheme designed by Defendant BMW. The descriptions of the Class Vehicles, which misrepresent the high-performance brakes as normal, have been written and designed by BMW, by and through its team of marketing personnel, including, but not limited to, Adam Sykes (Vice President of Corporate Communications) and Uwe Dreher (Vice President of Marketing). Other key members include Bernhard Kuhn (President and Chief Executive Officer of BMW NA) and David Duncan (Department Head, Corporate and Special Sales).

b. Authority to Speak: The representatives from Valencia BMW are responsible for speaking with and explaining the BMW vehicles to consumers. Their authority to speak is self-evident in their job titles. Defendant BMW's online and TV advertisements all invite consumers to visit a BMW authorized dealership and speak with a representative regarding their vehicles. The representatives at Valencia BMW were hired to effectuate the plot as designed by BMW's executives (listed previously) to intentionally misrepresent the Brake Defect as normal. The

executives, by the very nature of their role within Defendant's company, had the authority to design and implement the fraudulent representations regarding the Compound Brakes, implement procedures to train dealership personnel, and did do so in fact.

    c. To Whom They Spoke: The representatives from Valencia BMW spoke with Plaintiff directly.

    d. What they Said or Wrote: Defendant BMW represented to Plaintiff and the Class that the expensive high-performance brakes are normal and that the Class Vehicles are safe, reliable, and fit for their ordinary purpose. In the TSB, Defendant BMW said the noise is normal and generally not an indication of a malfunction. The representatives at Valencia BMW and Pacific BMW in accordance with the messages from Defendant BMW backed up these representations.

    e. When It Was Said or Written: At the time of leasing the Subject Vehicle (on November 4, 2020). Misrepresentations were further made via the TSB on November 1, 2019.

145.    Moreover, in line with *Committee on Children's Television, Inc. v General Foods Corp.*, 35 Cal.3d 197, 216 (1983), Defendants necessarily possess full information concerning the facts of the herein controversy since Defendants designed the defective brake system, labeled the Brake Defect as normal, trained all personnel on how to discuss the brake squeal when the vehicles are brought in for repair, and advertised the Class Vehicles to the public as safe, reliable, and fit for their ordinary purpose. Therefore, despite the heightened pleading standard in a fraud case, in the present matter Defendants are well aware of the entire chain of events which has culminated in this lawsuit.

146.    "The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); b) knowledge of falsify (or 'scienter'); c) intent to defraud, i.e., to induce reliance; d) justifiable reliance; and e) resulting damage." (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.)

    a. Here, Defendant BMW misrepresented the quality of the brake in the Class Vehicles. Defendant BMW fraudulently labeled the excessive brake noise as normal

and told Plaintiff and the Class that there are no problems with the Class Vehicles and that the Vehicles are safe, reliable, and fit for their ordinary purpose. Valencia BMW and Pacific BMW, under the guidance of Defendant BMW and in accordance with the TSB, told Plaintiff that the squeal was normal and nothing to worry about.

b.  Defendant BMW, Valencia BMW, and Pacific BMW knew that their representations were false and acted with the conscious and reckless disregard to the truth or falsity of such misrepresentations, promises, and wrongful acts.

c.  Defendant BMW, Valencia BMW, and Pacific BMW intended to induce Plaintiff and Class Members to rely on their misrepresentations so that Plaintiff and Class Members would purchase the Class Vehicles and pay the extra cost for the Subject Brakes. The only way to induce the lease and the sale of the Subject Brakes was to conceal the Brake Defect and misrepresent to consumers that the brake squeal is normal.

d.  Plaintiff had no reason to know that the Class Vehicles were defective and as such her reliance was justifiable. To show reasonable reliance, a plaintiff mush show: "1) the matter was material in the sense that a reasonable person would find important to determine how he or she would act…' and 2) it was reasonable for plaintiff to have relied on the misrepresentation." (*Hoffman v. 162. North Wolfe LLC* (2014) 228 Cal.App.4th 1178, 1194.) "Although a plaintiff's negligence in failing to discover the falsity of the statement or the suppressed information is not a defense to fraud…, a plaintiff's particular knowledge and experience should be considered in determining whether the reliance upon the misrepresentation or nondisclosure was justified." (*Ibid*.).

- A reasonable person wants to know whether their brakes are safe, reliable, and fit for their ordinary purpose. Defendant BMW, Valencia BMW, and Pacific BMW, however, continue to represent that the brakes are normal, and that they are not defective. Plaintiff did her own research and asked the representatives at Valencia BMW if the Subject Vehicle was worth the

purchase. Defendant BMW, Valencia BMW, and Pacific BMW used their status as experts in the industry to their advantage and led Plaintiff and the Class to falsely believe that the Class Vehicles are exceptional, free from defects, safe, reliable, and fit for their ordinary purpose. This is clearly not true, but unfortunately Plaintiff and the Class did not learn about this until after they already purchased/leased the Vehicle and experienced the dangers of the Brake Defect firsthand. After all these assurances, it is no surprise that Plaintiff was confused and upset when the Vehicle began to make loud, high-pitched squealing noises for no apparent reason.

e.  A plaintiff asserting fraud by misrepresentation must establish a complete causal relationship between the alleged misrepresentations and the harm claimed to have resulted therefrom. (*Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1499.) "This requires a plaintiff to allege specific facts not only showing he or she actually and justifiably relied on the defendant's misrepresentations, but also how the actions he or she took in reliance on the defendant's misrepresentations caused the alleged damages." (*Ibid*.) But for the representations that the Subject Vehicle was free from defects, Plaintiff and Class Members would not have acquired the Class Vehicle.

147.  The acts and omissions of Defendant BMW, by and through their joint representatives the General Sales Manager and the Finance Director at Valencia BMW, as complained of herein, were extreme and outrageous and Defendant BMW, Valencia BMW, and Pacific BMW are guilty of malice, oppression, and fraud in that its conduct was despicable, subjected Plaintiff to cruel and unjust hardship, and was carried on with a willful and conscious disregard for Plaintiff's rights or health for the sole purpose and intent of causing Plaintiff's damages and losses. Plaintiff is therefore entitled to recover an award of punitive damages for the sake of example and by way of punishing Defendant BMW, Valencia BMW, and Pacific BMW.

148.  As such, Plaintiff's justifiable and reasonable reliance on the intentional misrepresentations made by Defendant BMW and the representatives at Valencia BMW and Pacific BMW resulted in

1    substantial damage.

2    149.    As a direct and proximate result of the acts and omissions of Defendant BMW, Valencia

3    BMW, and Pacific BMW, Plaintiff has suffered damages for which relief is sought herein.

4    150.    Plaintiff's suffered damages and was harmed when he relied on Defendant BMW, Valencia

5    BMW, and Pacific BMW's false representations that the Brake Defect is normal and that the Class

6    Vehicles are safe, reliable, and fit for their ordinary purpose. The full extent of the damages goes

7    beyond the fee for purchasing the Class Vehicle. Damages include the entire cost of the lease paid by

8    Plaintiff, the depreciation in value of the Subject Vehicle, the costs of replacing the Compound brake

9    system, the costs of a replacement vehicle, and emotional distress.

10    151.    The harm to Plaintiff was not otherwise inevitable or due to unrelated causes because

11    Plaintiff would simply not have leased the vehicle at all.

12                            **SECOND CAUSE OF ACTION**

13                            Breach Of Express Warranty

14                            *(Against Defendant BMW)*

15    152.    Plaintiff re-alleges and incorporates by reference as fully set forth herein all paragraphs of

16    Class Action Complaint for Damages.

17    153.    Plaintiff is an intended third-party beneficiary of contracts between Defendant BMW and

18    its authorized dealerships, representatives, and agents. Plaintiff purchased the Subject Vehicle from a

19    BMW authorized dealership, representative, and/or agent. As such, Plaintiff was the intended (and not

20    incidental) third party beneficiary of any and all agreements entered into among Defendant and its

21    authorized dealerships, representatives, and agents, and any warranties, express or implied, flowing

22    therefrom. Plaintiff has had sufficient direct dealings with either BMW or its agents (dealerships) to

23    establish privity of contract.

24    154.    Under California law, "[a]ny affirmation of fact or promise made by the seller to the buyer

25    which relates to the goods and becomes part of the basis of the bargain creates an express warranty that

26    the goods shall conform to the affirmation or promise." Cal. Comm. Code § 2313(1)(a). Additionally,

27    "[a]ny description of the goods which is made part of the basis of the bargain creates an express

28    warranty that the goods shall conform to the description." Id. § 2313(1)(b).

-34-

155.    BMW's New Car Limited Warranty ("NCLW"), which provides coverage for all BMW vehicle systems up to four years or 50,000 miles, whichever occurs first, is given to the owner of a BMW vehicle and sold by an authorized BMW dealer in the United States. The NCLW covers any repair or replacement to correct a defect in the manufacturer's material and workmanship (i.e., a mechanical defect). An authorized BMW dealer will repair the defective part or replace it free of charge.

156.    BMW's written representations in the warranty manual(s), sale brochures, pamphlets, and other writings disseminated by BMW in the promotion, marketing, and sales of the Class Vehicles constitutes an express warranty and/or warranties to Plaintiff and the Class Members.

157.    BMW's advertising campaign(s) focused on its vehicles being free of defects, including but not limited to, that "there is no substitute" to the Class Vehicles being as printed in their product brochures, pamphlets, and media, and which focused on excellence, reliability, and safety of these vehicles. As such, BMW expressly warranted that such vehicles were free from inherent and latent defects.

158. The elements of a claim for breach of express warranty under Uniform Commercial Code ("UCC") 2-313 are as follows: (a) there was a sale of goods; (b) there was an affirmation of fact or promise about the quality of the goods, or a sample or model was provided; (c) the promise or affirmation (or sample or model) was part of the basis of the bargain; (d) the goods were not as warranted; and (e) an economic loss or personal injury occurred as a result of the breach of warranty.

159. BMW's written representations in the warranty manual(s), sale brochures, pamphlets, and other writings disseminated by BMW in the promotion, marketing, and sales of the Subject Vehicles constitutes an express warranty and/or warranties to Plaintiff and the Class Members.

160.    BMW's advertising campaign(s) focused on its vehicles being free of defects, including but not limited to, the Subject Vehicles being "truly exceptional," "biggest, fastest, most fuel-efficient car in its class," "named one of the '10 Best Engines'," "dialed to perfection," "equipped to deliver flawlessly," and "Best in Test" as printed in their product brochures, pamphlets, and media, and which focused on excellence, reliability, and safety of these vehicles. As such, BMW expressly warranted that such vehicles were free from inherent and latent defects.

161. The Subject Vehicles are manufactured goods and at all times relevant, Defendant manufactured, sold, and placed these products into the stream of commerce. The transactions by which the Class members purchased the Subject Vehicles were transactions for the sale of goods and at all times relevant, Defendant BMW was in the business of manufacturing, selling, and/or distributing these goods for sale throughout the United States, including California.

162. BMW, through its the warranty manual(s), sales brochures, pamphlets, and other writings guaranteed that the vehicles were free from inherent and latent defects.

163. For each of the Subject Vehicles at issue, BMW issued a standardized express written warranty which covers the base vehicle, including without limitation, the brake system, and warranted that the vehicles were free of defects. Applying any BMW warranty limitation period to avoid the need to repair this particular defect would be unconscionable in that, *inter alia*, the vehicles at issue contain an inherent latent defect which could arise at any time, the defect was already present at the time of delivery, BMW was either aware of or consciously and/or recklessly disregarded this defect which could not be discovered by Plaintiff and members of the class at the time of such purchase or lease, and purchasers or lessees lacked any meaningful choice with respect to the warranty terms.

164. The guarantee that the Subject Vehicles were free from inherent and latent defects was part of the basis of bargain by and between consumers and BMW.

165. Defendants have and continue to breach said express warranties in the following ways, among others as follows:

    a. At the time of manufacture and lease/sale of the Subject Vehicles, there existed an inherent, latent defect in the brake system;

    b. The brake system on the Subject Vehicles was not free from defects;

    c. The brake system on the Subject Vehicles was and is at all relevant times defective;

    d. BMW has refused to take responsibility for the defective brake system on the Subject Vehicles, denying all liability or even the existence of the defect as described herein;

    e. BMW has engaged in a nationwide conspiracy to cover up the Subject Vehicles' brake noise defect by systematically refusing to document visits by Plaintiff and other Class Members to authorized dealerships with the subject complaint;

f.  By failing to document these visits and provide repair orders, BMW has systematically deprived Plaintiff and other Class Members of their lemon law rights by distorting the Subject Vehicles' repair histories;

g.  The brake system is not unequivocal or uncompromising as represented by BMW since the brake systems were defective at the time of manufacture, sale, and delivery to Plaintiff and others similarly situated and they were making an unreasonably loud, high-pitched squealing noise which forced Plaintiff and others similarly situated to have the brakes of the vehicles repaired or replaced much more frequently than conventional counterparts; and

h.  Class Vehicles are simply not high performance brakes as warranted by BMW since the defective brake systems make an unreasonably loud, high-pitched squealing noise when braking which causes an impression of the Class Vehicles being dangerous and demonstrates that the Class Vehicles are defective.

166.  Plaintiff brought the Subject Vehicle to a BMW dealership for service ten (10) times. On February 22, 2021 and July 9, 2021, Plaintiff was specifically told that the brakes are not defective and that the squeaking is normal function of BMR performance brakes and referred Plaintiff to the brochure on bulletin 34 10 19.

167.  Plaintiff KARAMANOUKIAN provided initial notice to Defendant BMW of their breach as alleged herein on March 28, 2021.

168.  To date Defendants have failed to remedy their breach pursuant to Plaintiff's notices.

169.  Plaintiff and all other Class Members suffered economic injury because they bought a defective vehicle they otherwise would not have bought and/or paid more for the Subject Vehicle than they should have because the defect depreciated the value of the Subject Vehicles. Plaintiff and other Class Members have also spent money to have the brakes of the vehicles repaired or replaced much more frequently than conventional counterparts.

170.  As a result of Defendants' breach of express warranties as set forth above, Plaintiff and others similarly situated have suffered and will continue to suffer damages in an amount to be determined at trial.

///

### THIRD CAUSE OF ACTION

BREACH OF IMPLIED WARRANTY

*(Against Defendant BMW)*

171.    Plaintiff re-alleges and incorporates by reference as fully set forth herein all paragraphs of Class Action Complaint for Damages.

172.    A warranty that the Class Vehicles and Compound Brakes were in merchantable condition and fit for their ordinary purpose was implied by law in the instant transaction.

173.    Implied warranties are promises from the seller to the buyer that the product, if used as it is supposed to be used, is fit for that purpose or of an average quality. See U.C.C. 2-315 and 2-314.

174.    The elements of a claim for breach of the implied warranty of merchantability under § 2-314 are: (a) there was a sale of goods; (b) the seller was a merchant with respect to goods of that kind; (c) the goods were not "merchantable" at the time of sale; and (d) an economic loss or personal injury occurred as a result of the breach of warranty.

175.    The Subject Vehicles are manufactured goods. The transactions by which the Class members purchased the Subject Vehicles were transactions for the sale of goods.

176.    At all times relevant, Defendant BMW was in the business of manufacturing, selling, and/or distributing these goods for sale throughout the United States, including California. At all times relevant, Defendant BMW manufactured, sold, and placed these products into the stream of commerce.

177.    Defendant BMW impliedly warranted that the Class Vehicles, which it designed, manufactured, and sold or leased to Plaintiff and Class Members, were merchantable, fit, and safe for their ordinary use, not otherwise injurious to consumers, and equipped with adequate safety warnings. However, the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles and their brakes suffered from the Brake Defect at the time of sale that causes the vehicles to emit loud, high-pitched squealing noises which alters the driving habits of the operator, as well as districts all those on the road. Therefore, the Class Vehicles are not fit for their particular purpose of providing safe and reliable transportation.

178.    Defendant BMW impliedly warranted that the Class Vehicles were of merchantable quality

and fit for such use. This implied warranty included, among other things: (i) a warranty that the Class Vehicles and their brakes were manufactured, supplied, distributed, and/or sold by Defendant BMW were safe and reliable for providing transportation and would not consistently emit loud, high-pitched squealing noises altering driving habits and distracting everyone on the road; and (ii) a warranty that the Class Vehicles and their brakes and related components would be fit for their intended use while the Class Vehicles were being operated.

179.    Contrary to the applicable implied warranties, the Class Vehicles and the Subject Brakes and related components at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and the other Class members with reliable, durable, and safe transportation.

180.    The Class Vehicles were not suited for the ordinary purposes for which they were sold or leased. Plaintiff and Class Members are being told that the brake noise is normal. When Plaintiff and Class Members bring their Vehicles in for repair, they are told there is nothing wrong with the vehicle. Unfortunately, however, that is not necessarily true. Excessively squeaky brakes, like the Subject Brakes, are an indication that the brake system in the vehicle is failing for one or more reasons. Plaintiff and Class Members are driving the Vehicles under the false impression that everything is safe and acceptable.

181.    The loud, high-pitched squealing noise emitted when the brakes are applied create a safety hazard due to the potential to startle the Class Vehicle drivers, as well as having an adverse impact on driving decisions and habits of the Class Vehicle drivers. The Brake Defect distracts the Class Vehicle driver and third parties, endangering their physical safety and well-being due to a loss of concentration and focus on the road. Similarly, nearby pedestrians hear the loud braking nose then pay attention to the noise rather than having their full attention on other hazards in their path.

182.    Defendant BMW further breached its implied warranty by failing to properly disclose the Brake Defect. Defendant BMW attempts to brush the major safety issues associated with the Brake Defect by disclosing the Brake Defect as "normal." The Brake Defect, however, is anything but normal. Normal noise associated with brakes is intermittent. Ongoing brake noises, however like the noise present in the Class Vehicles, is a safety concern and cannot be disclosed as normal. Brakes that

always screech are an indication of a defective brake system and should not be callously ignored.

183.    Upon discovering the latent defects in the defective brake system on the Class Vehicles, Plaintiff took reasonable steps to notify Defendant BMW within a reasonable time that the product did not have the expected quality and contained the defects as alleged herein. All conditions precedent have occurred or been performed.

184.    BMW has actual notice of its breach of warranty. Through consumer complaints and information from its own repair facilities, BMW learned the defect, the existence an ubiquity of which it knew since at least 2013, has been the subject of publicized consumer disputes nationwide.

185.    Despite Plaintiff's and the other Class Members' normal and ordinary use, maintenance, and upkeep, the brakes continue to make noise and ultimately fail. The manufacturing and/or design defect existed at the time BMW transferred the Class Vehicles from its possession or control. The defect rendered the Class Vehicles unfit for their ordinary use and caused the vehicles to be unable to perform the tasks they were designed, advertised, and sold to perform.

186.    The presence of the defect in the Class Vehicles purchased by the Class substantially impairs the use and value of those goods. Moreover, the defects in the Class Vehicles render them non-conforming goods and/or were not the same quality as those generally accepted in the trade, were not fit for the ordinary purposes for which the goods were used, were of poor or below average quality within the description, and/or did not conform to the affirmations of fact made by BMW in its labeling, product inserts, and/or warranty materials it provided along with the lease/sale of the Class Vehicles.

187.    As a direct and proximate result of the Brake Defect in the Class Vehicles' design and manufacture and Defendant BMW's improper disclosures, Plaintiff has sustained injuries, damages, and loss.

188.    Defendant BMW is liable to Plaintiff and the Class Members for damages caused by the above defects and inadequacies in the design and manufacture of the Class Vehicles.

189.    As a direct and proximate result of the foregoing, Plaintiff and all other Class Members sustained significant loss and damage, including but not limited to, a reduction in fair market value and they did not receive the benefit of their bargain. Furthermore, Plaintiff and all other Class Members who leased the Class Vehicles suffered damages in that they leased a vehicle they would not have

otherwise leased and made higher monthly payments than they otherwise would have.

190.    Plaintiff and all other Class Members suffered economic injury because they bought and/or leased a defective vehicle they otherwise would not have bought/leased and/or paid more for the Class Vehicle than they should have because the defect depreciated the value of the Class Vehicles. Plaintiff and other Class Members have also spent money to have the brakes of the vehicles repaired or replaced much more frequently than conventional counterparts.

191.    Privity is not required in this case because Plaintiff and the Class Members' Class Vehicles are inherently dangerous due to the aforementioned defects and nonconformities.

192.    Nevertheless, Plaintiff and Class members are intended third-party beneficiaries of contracts, including express warranties, between Defendant BMW and its authorized dealerships, representatives, and agents. On information and belief, Defendant BMW's authorized dealerships, representatives, and agents purchased Class Vehicles from Defendants pursuant to valid and enforceable agreements. Because Plaintiff and Class members—rather than Defendant BMWs' authorized dealerships, representatives, and agents—were the intended end users of Class Vehicles, Plaintiff and Class members were the intended (and not incidental) third party beneficiaries of the agreements entered into among Defendant and its authorized dealerships, representatives, and agents, and any warranties, express or implied, flowing therefrom. Indeed, Defendant BMW's authorized dealerships, representatives, and agents did not and would not purchase Class Vehicles for personal use, therefore the implied warranties flowing to them actually are intended to protect their customers from the losses the Class Vehicles have and will continue to cause them. The dealers were not intended to be the ultimate consumers of the Class Vehicles; the warranty agreements were designed for and intended to benefit the ultimate consumers only. As such, Plaintiff and the other Class Members have had sufficient direct dealings with either BMW or its agents (dealerships) to establish privity of contract between Plaintiff and the Class Members. Accordingly, Defendant BMW is estopped from limiting claims for common law and statutory violations based on a defense of lack of privity.

///

///

///

-41-

# FOURTH CAUSE OF ACTION

BREACH OF WARRANTY

SONG-BEVERLY CONSUMER WARRANTY ACT, CIVIL CODE § 1790 *ET SEQ.*

*(Against Defendant BMW)*

193.     Plaintiff re-alleges and incorporates by reference as fully set forth herein, all paragraphs of Class Action Complaint for Damages. Plaintiff re-alleges and incorporates by reference as fully set forth herein all paragraphs of Class Action Complaint for Damages.

194.     Plaintiff and other Class members who purchased the Class Vehicles in California are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

195.     The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

196.     Defendant BMW is a "manufacturer" within the meaning of Cal. Civ. Code § 1791(j).

197.     Defendant BMW impliedly warranted to Plaintiff and the Class that its vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) and 1792, as described above.

198.     Cal. Civ. Code § 1791.1(a) states that "implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following: (1) pass without objection in the trade under the contract description; (2) are fit for the ordinary purpose for which such goods are used; (3) are adequately contained, packaged, and labeled; and (4) conform to the promises or affirmations of fact made on the container or label.

199.     The Class Vehicles would not pass without objection in the automotive trade because of the Brake Defect that causes the vehicles to emit loud, sudden, and unexpected squealing leading to a serious and unreasonable safety risk to Vehicle drivers, occupants, and nearby third parties.

200.     The Vehicles are not adequately labeled because the labeling fails to properly disclose the Brake Defect and its dangerous safety implications.

201.     Defendant BMW breached the implied warranty of merchantability by manufacturing and selling Class Vehicles containing the Brake Defect.

202.     The Brake Defect has deprived Plaintiff and the Class of the benefit of their bargain and have caused the Class Vehicles to depreciate in value. Plaintiff and Class Members have ultimately paid more money for the Class Vehicles then they otherwise would have had the Brake Defect been

-42-

properly disclosed. In fact, Plaintiff and Class Members would not have even purchased the Vehicles in the first place if disclosure was proper. Plaintiff and other Class Members have also spent money to have the brakes of the vehicles repaired or replaced much more frequently than conventional counterparts.

203.    The time limits contained in Defendant BMW's warranty period are also unconscionable and inadequate to protect Plaintiff and the Class Members. Among other things, Plaintiff Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonable favor Defendant BMW. A gross disparity of bargaining power existed between Defendant BMW and Plaintiff and Class Members and Defendant BMW knew or should have known that the Class Vehicles brake systems were defective at the time if sale and would fail well before the end of their useful lives.

204.    As a direct and proximate result of Defendant BMW's breach of its express warranties, Plaintiff and the other Class Members received goods whose condition substantially impairs their value to Plaintiff and the other Class Members. Plaintiff and the other Class Members have been damaged as a result of, *inter alia,* the diminished value of Defendant BMW's products, the products' malfunctioning, and actual and potential increased maintenance and repair costs.

205.    Pursuant to Cal. Civ. Code §§ 1793.2 and 1794, Plaintiff and the other Class Members are entitled to damages and other legal and equitable relief including, at their election, the purchase price of the Class Vehicles brake systems, or the overpayment or diminution in value of these devices.

206.    Pursuant to Cal. Civ. Code § 1794, Plaintiff and the other Class Members are entitled to costs and attorney fees.

### FIFTH CAUSE OF ACTION

VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT

CIVIL CODE § 1750 ET SEQ.

*(Against Defendants BMW)*

207.    Plaintiff re-alleges and incorporates by reference as fully set forth herein all paragraphs of Class Action Complaint.

208.    This cause of action is brought pursuant to the California Consumer Legal Remedies Act,

*California Civil Code § 1750, et seq.* ("CLRA").

209.    The Subject Vehicles are "goods" under the CLRA that was bought primarily for personal, family, or household purposes as defined in the CLRA in *California Civil Code § 1761(a).*

210.    Plaintiff and each member of the Class are "consumers" within the meaning of *California Civil Code § 1761(d).*

211.    Defendants are "persons" as defined by *California Civil Code § 1761(c).*

212.    Defendants' actions, representations, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

213.    The Consumer Legal Remedies Act ("CLRA"), *California Civil Code § 1750 et seq.* applies to Defendants' actions and conduct described herein because it extends to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

214.    The CLRA prohibits the following unfair methods of competition and unfair or deceptive acts or practices, among others: (5), Defendants have represented that the Subject Vehicles have characteristics and benefits that they do not have; (7) Defendants have represented that the Subject Vehicles are of a particular standard, quality, or grade when they are not; (9) Defendants have advertised the Subject Vehicles without an intent to sell them as advertised; (14) Defendants have misrepresented that a transaction confers or involves legal rights, obligations, or remedies of Plaintiff and other members of the Class concerning the Subject Vehicles when they were not; (18) Defendants have represented that the Subject Vehicles were supplied in accordance with previous representations when they were not; and (19) Defendants unlawfully inserted an unconscionable provision in the contract to purchase or lease the Subject Vehicles here at issue by inserting into such contracts provisions where the consumers purport to waive a right or benefit provided by law to obtain a repair or a retrofit of an inherent defect without a clear statement and consent to such provisions.

215.    Defendants had a duty to disclose to Plaintiffs that the Subject Brakes are "noisy high-performance brakes" and that the brake noise is NOT normal because (1) such disclosures were necessary in order to make its other statements not misleading; (2) they were known material facts; (3) Defendants knew that it had exclusive knowledge that was not accessible to Plaintiffs; and (4) it was

reasonable for Plaintiffs to expect disclosure of such facts.

216.   Defendants violated the CLRA by misrepresenting the condition of the Subject Brakes and concealing the issue with the brakes by labeling the noise as normal.

217.   Defendants have a deceptive pattern and practice of: (1) failing to inform consumers that the Subject Vehicles are noisy; (2) falsely advertising the Subject Brakes as "stunning" and "lasting longer than conventional counterparts"; and (3) falsely representing that the Subject Brakes are superior and therefore worth the additional cost.

218.   Defendants' deceptive acts alleged herein occurred in the course of selling a consumer product and Defendants have done so continuously through the filing of this Complaint.

219.   If Defendants are not restrained from engaging in these types of practices in the future, Plaintiffs and other members of the general public will continue to suffer harm.

220.   As a direct and proximate result of Defendants violation of Civil Code § 1770 *et seq.*, Plaintiff and other Class members have suffered irreparable harm and monetary damages entitling them to both injunctive relief and restitution. Plaintiff, on behalf of himself and on behalf of the Class, seek damages and all other relief allowable under the CLRA.

221.   Defendants' wrongful conduct, as set forth above, was willful, oppressive, and malicious. Accordingly, Plaintiff, and others similarly situated, seek punitive damages against Defendants in an amount to deter Defendants from similar conduct in the future.

222.   Pursuant to Civil Code § 1782, Plaintiff provided notice to Defendants at least thirty days prior to filing this action for damages.

223.   Defendants failed to make the showing required by Civil Code § 1782(c).

224.   As a result, Plaintiff seeks actual and punitive damages for violation of the CLRA. In addition, pursuant to Civil Code § 1782(a)(2), Plaintiff and members of the class are entitled to an order enjoining the above-described wrongful acts and practices of Defendants, providing restitution to Plaintiff and the Class, ordering payment of costs and attorneys' fees, and any other relief deemed appropriate and proper by the Court under Civil Code § 1780.

225.   On behalf of the general public, Plaintiffs request that an injunction against Defendants be issued to enjoin them from continuing to engage in the unlawful conduct alleged herein, namely selling

used cars without disclosing their accurate history, condition, and price.

226.    Plaintiffs are also entitled to recover attorney's fees and costs under the CLRA in connection with this litigation.

### SIXTH CAUSE OF ACTION

VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW

BUSINESS AND PROFESSIONS CODE § 17200 ET SEQ.

*(Against Defendant BMW)*

227.    Plaintiff re-alleges and incorporates by reference as fully set forth herein all paragraphs of Class Action Complaint.

228.    Plaintiff has standing to bring this claim because Plaintiff has lost money or property as a result of the misconduct alleged. Furthermore, Plaintiff is seeking injunctive relief on behalf of a class who does not have the same knowledge as Plaintiff. Therefore, there is a likelihood of repeat injury to the Class Members who are unaware of Defendant's misrepresentations. *See Harris v. Las Vegas Sands L.L.C.*, No. 12-10858, 2013 WL 5291142 (C.D. Cal. Aug. 16, 2013) (Gee, J.).

229.    A plaintiff has standing when they (1) lose or are deprived of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) the economic injury was the result of, i.e., caused by, the unfair business practice of false advertising that is the gravamen of the claim. *Kwikset Corp. v. Superior Court* (201) 51 Cal.4th 310, 322.

230.    Economic injury from unfair competition exists if a plaintiff (1) surrenders in a transaction more, or acquires in a transaction less, than he or she otherwise would have; (2) has a present or future property interest diminished; (3) is deprived of money or property to which he or she has a cognizable claim; or (4) is required to enter into a transaction, costing money or property, that would otherwise have been unnecessary. *Id.* at 323.

231.    Plaintiff brings this claim on behalf of herself, and others similarly situated in her representative capacity as a private attorney general against Defendant BMW for their unlawful, unfair, fraudulent, untrue, and/or deceptive business acts and/or practices pursuant to California Business and Professions Code § 17200 *et seq.* ("UCL"), which prohibits all unlawful, unfair, and/or fraudulent business acts and/or practices.

232.    Plaintiff asserts these claims as they are representative of an aggrieved group and as a private attorney general on behalf of the general public and other persons who have expended funds that Defendant BMW should be required to pay or reimburse under the restitution remedy provided by California Business and Professions Code § 17200 *et seq.*

233.    The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant BMW as alleged herein constitute unlawful, unfair, and/or fraudulent business acts and/or practices within the meaning of California Business and Professions Code § 17200 *et seq.*

234.    The acts, omissions, misrepresentations, practices, non-disclosures, and/or concealments of material facts, and/or deception alleged in the preceding paragraphs occurred in connection with Defendant BMW's conduct of trade and commerce in California.

235.    As a direct and proximate result of the aforementioned acts, Defendant BMW received monies expended by Plaintiff and others similarly situated who leased/purchased the Class Vehicles.

236.    A business act or practice is **unlawful** if it violates a law. Laws that can be used to find an unlawful business practice include statutes that are civil or criminal in nature and can range from federal and state statutes to municipal regulations. Defendant BMW's acts and practices are **unlawful** because they violate California Civil Code §§ 1668, 1709, 1710, and 1750 et seq., and California Commercial Code § 2313. 95.

237.    A business act or practice is **unfair** if it is one that offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. Defendant BMW has engaged in **unfair** business acts or practices in that the justification squealy brakes are outweighed by the gravity of the inevitable harm to the consumer when the brakes wear out and the consumer is unaware, particularly considering the available alternatives. The defective design of the Subject Brakes and the subsequent notion from BMW that the noises coming from them is normal offends public policy, is immoral, unscrupulous, unethical, and offensive, or causes substantial injury to consumers because it induces consumers to purchase the expensive Subject Brakes that ultimately diminish the value of the Class Vehicles and put the Plaintiff and other consumers in grave danger since they are unaware of when the brakes need to be replaced. Furthermore, Defendant BMW's conduct and intent to widely market the Class Vehicles to California consumers, which involved false

1    and misleading advertising, offends the established public policy of the State of California and is

2    immoral, unethical, oppressive, unscrupulous, and substantially injurious.

3        238.    A business act or practice is **fraudulent** if it is likely to deceive members of the public.

4    Defendant BMW has engaged in **fraudulent** business acts or practices in that the representations and

5    omissions of material fact described above have a tendency and likelihood to deceive

6    purchasers/lessees of the Class Vehicles and the general public, as is clear by the outcome with

7    Plaintiffs. Defendant BMW falsely advised class members that the non-conformities exhibited by the

8    Class Vehicles as outlined herein were in fact normal and did not constitute a defect.

9        239.    Defendant BMW aggressively promoted and advertised their Class Vehicles in an unlawful,

10    unfair, fraudulent, untrue, and/or deceptive manner that is and was likely to deceive the public.

11       240.    Defendant BMW falsely advised class members that the non-conformities exhibited by the

12    Class Vehicles as outlined herein were in fact normal and did not constitute a defect.

13       241.    Defendant BMW actively engaged in a custom and practice of encouraging failure to

14    and/or failing to document complaints by class members regarding the non-conformities exhibited by

15    the Class Vehicles as outlined herein.

16       242.    Defendant BMW's misconduct as alleged in this action constitutes negligence and other

17    tortious conduct and this misconduct gives Defendant BMW an unfair competitive advantage over

18    their competitors.

19       243.    Defendant BMW has engaged in unfair competition and unfair, unlawful, or fraudulent

20    business practices by the conduct, statements, and omissions described above, and by knowingly and

21    intentionally concealing from Plaintiff and the Class members that the Class Vehicles suffer from a

22    defect (and the costs, safety risks, and diminished value of the vehicles as a result of these problems).

23    Defendant BMW should have disclosed this information because it was in a superior position to know

24    the true facts related to the defect, and Plaintiff and Class members could not reasonably be expected

25    to learn or discover the true facts related to the defect.

26       244.    The defective brake system constitutes a safety issue that triggered Defendant BMW's duty

27    to disclose the safety issue to consumers.

28       245.    These acts and practices have deceived Plaintiff and are likely to deceive the public. In

-48-

failing to disclose the defect and suppressing other material facts from Plaintiff and the Class members, Defendant BMW breached its duties to disclose these facts, violated the UCL, and caused injuries to Plaintiff and the Class members. The omissions and acts of concealment by Defendant BMW pertained to information that was material to Plaintiff and the Class members, as it would have been to all reasonable consumers.

246.    The injuries suffered by Plaintiff and the Class members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff and the Class members should have reasonably avoided.

247.    Plaintiff seeks to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Defendant BMW, to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under California Business & Professions Code § 17200

248.    As a direct and proximate result of Defendant BMW's violations, Plaintiff and Class Members suffered injuries in fact and lost money because they purchased the Class Vehicles and paid the price they paid believing the Vehicles to be free from defects when they were not. In fact, Subject Brakes cost consumers an additional cost of at least $4,000.

249.    Plaintiff still has the defective Subject Vehicle and continues to be harmed by its defects.

250.    Defendant BMW's conduct constitutes unfair acts or practices conducted in the course of Defendant BMW's respective businesses, and thereby constitutes violations of California Business and Professions Code § 17200 *et seq.*  Defendant BMW's conduct and intent to widely market the Class Vehicles to California consumers involved false and misleading advertising.  Such conduct offends the established public policy of the State of California and is immoral, unethical, oppressive, unscrupulous and substantially injurious.

251.    Pursuant to California Business and Professions Code § 17203 of the UCL, Plaintiff seeks an order of this Court enjoining BMW from continuing to engage in unlawful, unfair or fraudulent business practices, and any other act prohibited by the UCL. Plaintiff also seeks an order requiring BMW to comply with the terms of the California Secret Warranty Law by (a) notifying Class Members of the defective brake warranty; (b) providing free installation of the re-designed brakes to

Class Members, (c) notifying dealers of the facts underlying the brake problem and the terms of the brake warranty, (d) notifying the New Motor Vehicle Board of the brake warranty; and (e) identifying and reimbursing Class Members who have paid for brake repairs (including the re-designed brake) to be installed. Plaintiff also seek an order (i) enjoining BMW from failing and refusing to make full restitution of all moneys wrongfully obtained; and (ii) disgorging all ill-gotten revenues and/or profits earned or retained as a result of BMW's violations of the California Secret Warranty Law.

252.   As set forth, above, BMW has violated the California Secret Warranty Law. As a direct and proximate result of BMW's conduct, BMW obtained secret profits by which it became unjustly enriched at Plaintiff' and the Class members' expense.

253.   Accordingly, Plaintiff seeks an order establishing BMW as a constructive trustee of the secret profits that served to unjustly enrich BMW, together with interest during the period in which BMW has retained such funds and requiring BMW to disgorge those funds in a manner to be determined by the Court.

254.   In addition to the relief requested in the Prayer below, Plaintiff seeks the imposition of a constructive trust over, and restitution of, the monies collected, and profits realized by Defendant BMW.

255.   Defendant BMW's conduct, as fully described herein, constitutes acts of untrue and misleading advertising and are, by definition, violations of California Business and Professions Code § 17200 *et seq.*

256.   The unlawful, unfair, deceptive and/or fraudulent business practices and/or false and misleading advertising of Defendant BMW, as fully described herein, present a continuing threat to members of the public to be injured by the Class Vehicles equipped with the defective brake systems as alleged herein.

## SEVENTH CAUSE OF ACTION

VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17500 ET SEQ.

*(Against Defendant BMW)*

257.   Plaintiff re-alleges and incorporates by reference as fully set forth herein all paragraphs of Plaintiff's Complaint for Damages.

258.     Plaintiff has standing to bring this claim because Plaintiff has lost money or property as a result of the misconduct alleged. Furthermore, Plaintiff is seeking injunctive relief on behalf of a class who does not have the same knowledge as Plaintiff. Therefore, there is a likelihood of repeat injury to the Class Members who are unaware of Defendant BMW's misrepresentations. *See Harris v. Las Vegas Sands L.L.C.*, No. 12-10858, 2013 WL 5291142 (C.D. Cal. Aug. 16, 2013) (Gee, J.).

259.     *Business & Professions Code § 17500* prohibits unfair, deceptive, untrue, and misleading advertising in connection with the disposal of personal property (among other things), including, but not limited to, false statements as to worth, value, and former price.

260.     Defendant BMW caused to be made or disseminated throughout California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendant BMW, to be untrue and misleading to consumers, including Plaintiff and the other Class members. For example, Defendant BMW assured Plaintiff and Class Members that the Class Vehicles were in excellent mechanical condition, and were safe, reliable, and fit for their ordinary purpose which included brakes that do not make a loud, high-pitched squealing noise.

261.     Defendant BMW has violated California Business & Professions Code § 17500 because the misrepresentations and omissions regarding the safety, reliability, and functionality of its Class Vehicles as set forth in this Complaint were material and likely to deceive a reasonable consumer.

262.     Plaintiff still has the defective Subject Vehicle and continues to be harmed by its defects.

263.     Plaintiff and the other Class members have suffered an injury in fact, including the loss of money or property, as a result of Defendant BMW's unfair, unlawful, and/or deceptive practices. In purchasing or leasing their Class Vehicles, Plaintiff and the other Class members relied on the misrepresentations and/or omissions of Defendant BMW with respect to the safety and reliability of the Class Vehicles. Defendant BMW's representations were untrue because the Class Vehicles are distributed with defective Subject Brakes. Had Plaintiff and the other Class members known this fact, they would not have purchased or leased their Class Vehicles and/or paid as much for them. Accordingly, Plaintiff and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain.

264.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendant BMW's business. Defendant BMW's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the state of California and nationwide

265.    The acts of untrue and misleading advertising by Defendant BMW described above present a continuing threat to members of the general public in that Defendant BMW persist and continue to engage in these practices with respect to the general public and will not cease doing so unless and until an injunction is issued by this Court.

266.    As a direct and proximate result of Defendant BMW's conduct, Plaintiff has suffered damages for which relief is sought herein. As such, Plaintiff, individually and on behalf of the other Class members, request that this Court enter such orders or judgments as may be necessary to enjoin Defendant BMW from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and the other Class members any money Defendant BMW acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

## EIGHTH CAUSE OF ACTION

NUISANCE

*(Against Defendant BMW)*

267.    Plaintiff re-alleges and incorporates by reference as fully set forth herein all paragraphs of Class Action Complaint.

268.    Nuisance is a condition of substantial interference that causes unreasonable discomfort. Most often, nuisances are generally in the form of things like noises, odors, or smoke.

269.    A public nuisance is an act by a defendant that interferes with the public's use or enjoyment of public property. Alternatively, it is an act by the defendant that inconveniences the public in the exercise of rights common to all.

270.    A public nuisance suit is established if the plaintiff claims that they suffered harm because the defendant created a nuisance. In other words, the defendant, (a) by acting or failing to act, creating a condition, or permitting a condition to exist that was harmful to health; was indecent or offensive to the senses; was an obstruction to the free use of property so as to interfere with the comfortable enjoyment of life or property; unlawfully obstructed the free passage or use in the customary manner, of any

navigable lake, river, bay, stream, canal, or basin, or any public park, square, street, or highway; or was a fire hazard to plaintiff's property; (b) the condition affected a substantial number of people at the same time; (c) an ordinary person would be reasonably annoyed or disturbed by the condition; (d) the seriousness of the harm outweighs the social utility of defendant's conduct; (e) plaintiff did not consent to defendant's conduct; (f) plaintiff suffered harm that was different from the type of harm suffered by the general public; and (g) defendant's conduct was a substantial factor in causing plaintiff's harm.

    a.  BMW created and permitted and continues to permit, by distributing and selling the Subject Brakes, a condition to exist that is offensive to the senses of the owners and an obstruction to the free use of the Class Vehicles, so as to interfere with the comfortable use and enjoyment of their vehicles

    b.  The condition interfered and continues to interfere with the use and enjoyment of Class Vehicles by their owners and lessors. Furthermore, the condition affects a substantial number of people at the same time because anyone in the vicinity of the Subject Vehicle will hear the noise created by the Subject Brakes. Other drivers and pedestrians are startled when they hear the noise.

    c.  An ordinary person would be reasonably annoyed or disturbed by the loud squealing noise coming from the brakes when driving at slow speeds.

    d.  The seriousness of the harm outweighs the social utility of BMW's conduct.

    e.  Plaintiff and the remaining Class Members did not consent to the defective condition for the simple reason that the defective condition was never properly disclosed. Defendant insists on labeling the defective condition as normal.

    f.  Plaintiff suffered harm that was different from the type of harm suffered by the general public since he was driving the vehicle that was creating the loud noises. Plaintiff received a significant amount of negative attention because of the noise from Subject Brakes, especially while driving in crowded streets within city limits. Additionally, the noise defect draws the attention of officers of law enforcement agencies, who associate brake squeals with high-speed driving and racing.

    g.  If the Subject Brakes did not make noises, then none of the above would have happened.

Therefore, BMW's conduct was a substantial factor in causing Plaintiff's harm. All Class Members that have the Subject Brakes have been harmed, regardless of whether they complained of the noise to BMW authorized dealerships or not.

## PRAYER

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, and also on behalf of the general public, pray for judgment against all Defendants as follows:

A. An order certifying the case as a class action and appointing Plaintiff and their counsel to represent the Class;

B. For actual damages;

C. For statutory damages in an amount of not less than $1,000 per Plaintiff or Class Member pursuant to California Civil Code § 1780(a)(1);

D. For restitution as appropriate;

E. For statutory pre-judgment interest;

F. For punitive damages in an amount to deter Defendants from similar conduct in the future;

G. For any additional and consequential damages suffered by Plaintiff and the Class;

H. For reasonable attorneys' fees and the costs of this action;

I. For declaratory and/or equitable relief under the causes of action stated herein; and

J. For such other relief as this Court may deem just and proper.

### PLAINTIFF HEREBY REQUESTS A JURY TRIAL IN THIS MATTER

Plaintiff demands a trial by jury for himself and the Class on all claims so triable.

DATED: July 23, 2021                    THE MARGARIAN LAW FIRM


                                        By  _/s/ Hovanes Margarian_____
                                        Hovanes Margarian,
                                        Attorney for Plaintiff,
                                        and all others similarly situated.

PLAINTIFF KARAMANOUKIAN'S CLASS ACTION COMPLAINT FOR DAMAGES

## DECLARATION OF HOVANES MARGARIAN

## PURSUANT TO CIVIL CODE § 1780(d)

I, HOVANES MARGARIAN, declare as follows:

1.      I am an attorney at law duly licensed to practice before all courts of the State of California and am the principal attorney at the Margarian Law Firm, one of the counsels of record for Plaintiff. I have personal knowledge of the matters set forth below and if called upon as a witness could and would competently testify thereto.

2.      I am informed and believe that venue is proper in this court pursuant to Civil Code § 1780(d) based on the following facts:

     a.  Defendant has performed transactions at issue in this action, or has obtained financial benefit from such transactions, at all times relevant to this action, in Los Angeles, California; and

     b.  At all relevant times herein, Plaintiff KARAMANOUKIAN resided in Los Angeles County.

WHEREFORE, I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this Declaration was executed this 23rd Day of July 2021 at Glendale, California.

DATED: July 23, 2021                              THE MARGARIAN LAW FIRM


By  _/s/ Hovanes Margarian_____
Hovanes Margarian,
Attorney for Plaintiff,
and all others similarly situated.

PLAINTIFF KARAMANOUKIAN'S CLASS ACTION COMPLAINT FOR DAMAGES